UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DONNA McGUIRE,

    Plaintiff,

vs.

SHEILA WARREN, sued in her individual capacity, COUNTY OF ORANGE,

    Defendants.
------------------------------------------------------x

05 CIV. 2632

**COMPLAINT**

JUDGE CONNER

ECF CASE

    Plaintiff, by and through her counsel, Michael H. Sussman, hereby states and avers:

## I. PARTIES

    1. Plaintiff, Donna McGuire, is a resident of the State of New York, County of Orange. She is of legal age and a citizen of the United States.

    2. Defendant, Sheila Warren, is a resident of the State of New York, County of Orange. She is of legal age and a citizen of the United States. She is sued in her individual capacity. The actions complained of herein were committed under color of state law and using the authority accorded defendant Warren by state law.

    3. Defendant County of Orange is a body municipal organized pursuant to the laws of the State of New York. It may sue and be sued and is located within

this judicial district for violations of federal rights.

## II. JURISDICTION

4. As plaintiff contends that defendants violated her federal constitutional rights, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988. As the state claims arise from the same nucleus of operative facts as the federal claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367.

## III. FACTUAL AVERMENTS

5. Plaintiff is a certified special educator, having been employed by the Monroe-Woodbury School District since 1980 and, before then, as a teacher in the Port Jervis School District. Plaintiff also holds a New York State license as a school district administrator, enabling her to serve as a School Superintendent or principal.

6. In or about 1997, plaintiff signed a year-by-year contract with the defendant County or Orange requiring her to provide early intervention special education services to children under the age of three.

7. The children plaintiff serviced needed special education services and included children diagnosed as autistic.

8. Plaintiff used various methods in assisting these children and their

families, including the ABA teaching method, which the New York State Early Intervention Guidebook officially recommends.

9. At the request of parents in whose home she provided educational services and as part of her function, plaintiff would update relevant review committees concerning the progress of children she was assigned to assist.

10. Plaintiff reasonably deemed this to be part of the services she provided and wrote such assessments in the best interests of the children.

11. Plaintiff had no personal motive in preparing and submitting such reports to relevant review school district committees.

12. Defendant Sheila Warren, a nurse by training, is employed by defendant County's Department of Health and serves as Director of Intervention Services.

13. In her position, defendant Warren was responsible for supervising the implementation of plaintiff's contract as an early intervention provider.

14. Between 2001-2004, parents sought home-based ABA services for their children. All ABA services were delivered through agencies.

15. Several times, defendant Warren opposed the provision of the quantum of services the parents sought and advocated fewer hours of home-based ABA services.

16. Defendant Warren concluded that plaintiff was behind the parents'

requests for more hours of home-based ABA services than she wished to provide and, on several occasions, criticized plaintiff for allegedly promoting the provision of such services.

17. In fact, plaintiff tried to ensure that children received the quantum of services which would assist them, including home-based services.

18. Defendant Warren strongly supported the provision of pre-school services in center-based settings.

19. Warren generally disfavored parental requests for pre-school ABA home-based services.

20. Again, defendant Warren concluded that plaintiff was an advocate for the provision of pre-school home-based services and criticized McGuire for this.

21. Commencing December 9, 2002, plaintiff served as Director of Bright Beginnings, an agency which provided early intervention and pre-school services.

22. As an independent contractor, plaintiff often brought to the agency cases of autistic children in need of ABA services.

23. Warren disallowed independent contractors like plaintiff from offering ABA services except as part of an agency like Bright Beginnings.

24. As of the summer of 2004, plaintiff was a popular provider of services for special education children, in demand amongst parents of children in need of

such services.

25. In July 2004, defendant County signed a contract with plaintiff requiring her to provide early educational services in exchange for hourly remuneration. Plaintiff had signed the same contract at the county's request the prior April.

26. In August 2004, after all EI required paperwork was submitted and a CPSE meeting was held, a parent requested that plaintiff provide a letter to a CPSE Chairperson expressing support for the continuation of services at an integrated day care center which the child was attending. Plaintiff prepared such a letter.

27. After plaintiff noted her preparation of this letter in progress notes provided to her, defendant Warren verbally directed that Bright Beginnings remove plaintiff from all cases.

28. On September 21, 2004, at Warren's direction, Bridget Perrone, one of her subordinates, advised an agency requesting plaintiff's assignment as an early intervention provider to seek a different provider. This directive followed plaintiff's acceptance of this assignment and her contacting the family to arrange commencement of services.

29. On September 21, 2004, defendant Warren placed in writing her directive removing plaintiff from all Bright Beginnings cases effective September

17, 2004. Defendant Warren directly linked this decision to plaintiff's preparation of the letter supporting continued ABA services at an integrated day care center, as referenced in para. 25, above.

30. By e-mail dated September 28, 2004, defendant Warren and defendant County's Commissioner of Health, Jean Hudson, M.D., terminated plaintiff's contract and her provision of services effective October 31, 2004.

31. Defendant Warren circulated an e-mail as an "urgent" "priority" to "early intervention ongoing service coordinators", "early intervention evaluators", "early intervention providers", "pre school special education providers", "pre-school special education evaluators", "Committee on Preschool Special Education Chairpersons," a total of 144 individuals or organizations, announcing the termination of plaintiff's contract and providing no reason for this action.

32. Defendants did not send a copy of this e-mail to plaintiff nor notify her that they had sent this communication.

33. Before circulating this e-mail, defendants had provided plaintiff with no opportunity to defend or explain any aspect of her conduct.

34. Dr. Hudson sent plaintiff a letter terminating her independent contract with the county and providing no reason therefor.

35. Plaintiff breached no term of her contract with defendant County.

36. Defendants terminated plaintiff's contract because she engaged in protected speech in support of educational programs she believed necessary for those children she was assigned to assist.

37. After defendant Warren circulated the "termination e-mail," an attorney for Bright Beginnings questioned the legal basis for defendants' action and demanded that Warren enumerate any violations of law or regulation which plaintiff and/or Bright Beginnings had committed.

38. Defendants made no substantive response to this demand.

39. Thereafter, defendants offered to reinstate plaintiff to her prior status and extend her a new contract provided she forfeit the right to sue defendants, or those acting in concert with them, for the wrongful termination of her contract and any other violations of her legal rights.

40. Plaintiff refused to sign such an agreement and, thereafter, was not allowed to resume her work under an individual contract with defendant county.

41. Plaintiff now works on pre-school cases as a special education teacher and supervises her own ABA cases through Bright Beginnings. She does not work as an independent vendor providing early intervention special education services.

42. On October 8, 2004, though plaintiff had not signed a new contract with

defendant County, defendants put out another e-mail indicating that her contract had been reinstated.

43. Said reinstatement was unconditionally stated, contrary to defendants' express position that plaintiff would only be reinstated or provided a new contract upon signing a general release in favor of defendant county, its officers, agents and assigns.

44. Far unlike the demand for her services before the termination of her contract, since October 8, 2004, plaintiff has been contacted just once, in late February 2005, to accept a case as an independent provider.

45. Plaintiff rejected this request due to the lack of a contract between her and defendant County.

46. By and through the conduct complained of above, defendants have caused plaintiff pecuniary and non-pecuniary injuries.

47. By and through the conduct complained of above, defendants have caused plaintiff humiliation, embarrassment, emotional anxiety and mental anguish.

48. By and through the conduct complained of above, defendants have injured plaintiff's potential to obtain administrative positions.

49. Defendant Warren's conduct was malicious and spiteful and not

motivated by a reasoned or proper public purpose.

**CAUSES OF ACTION**

50. Plaintiff re-alleges paras. 1-49 as if fully re-written herein.

51. Defendant Warren terminated plaintiff's contract in retaliation for her protected speech on matters of public importance, i.e., the proper provision of educational services to special education classified children, in violation of the First Amendment of the Constitution and as made actionable by and through 42 U.S.C. sec. 1983.

52. Defendant County terminated plaintiff's contract in retaliation for her protected speech on matters of public importance, i.e., the proper provision of educational services to special education classified children, in violation of the First Amendment of the Constitution and as made actionable by and through 42 U.S.C. sec. 1983.

53. Defendants violated the due process clause of the Fourteenth Amendment by divesting plaintiff of a valuable property interest for cause without following the provisions of her contract which required her to have an opportunity to cure any breach.

54. Defendants violated the due process clause of the Fourteenth Amendment by damaging plaintiff's reputation or liberty interest without due

process of law.

55. Defendants breached plaintiff's contract by terminating her for speaking out about matters of public importance, in violation of law, and a "for cause" basis for termination.

56. Moreover, contrary to the signed contract between plaintiff and the County, defendants failed to provide plaintiff with any timely notice of an alleged breach of her contract and any opportunity to cure any such breach.

57. In failing to provide such an opportunity, defendants breached plaintiff's contract without reference to their motive.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays that this Honorable Court:

a) accept jurisdiction of this cause;

b) empanel a jury to hear and decide the matters within its purview;

c) award to plaintiff compensatory damages incurred by and through defendants' wrongful conduct as set forth above;

d) award to plaintiff and against defendant Warren punitive damages for the malicious and spiteful violation of plaintiff's clearly established constitutional right to be free of retaliation for protected speech;

e) award to plaintiff damages for defendant County's breach of contract, including

consequential damages arising therefrom;

f) order defendants to re-instate plaintiff under the terms and conditions of her prior contract, without requiring her to sign a general release surrendering any of her legal rights;

g) award to plaintiff the reasonable fees and costs associated with prosecution of this action, and

h) enter any other relief which the court deems just and equitable and required by law or equity.

Respectfully submitted,

Michael H. Sussman (3497)

Law Offices of Michael H. Sussman
PO Box 1005
Goshen, New York 10924

Dated: March 7, 2005