UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
|  |  | **ECF CASE** |
| DONNA McGUIRE, | : |  |
|  |  | 05 Civ. 2632 (WCC) |
| Plaintiff, | : |  |
|  |  |  |
| - against - | : | **OPINION** |
|  |  | **AND ORDER** |
| SHEILA WARREN, sued in her Individual | : |  |
| Capacity, and COUNTY OF ORANGE, |  |  |
|  | : |  |
| Defendants. |  |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

LAW OFFICES OF MICHAEL H. SUSSMAN
**Attorneys for Plaintiff**
40 Park Place, 2ⁿᵈ Floor
Goshen, New York  10924

MICHAEL H. SUSSMAN, ESQ.

      Of Counsel


DAVID L. DARWIN
ACTING COUNTY ATTORNEY FOR ORANGE
  COUNTY
**Attorneys for Defendants**
255 Main Street
Goshen, New York  10924

LAURA WONG-PAN,
  Asst. County Attorney

      Of Counsel

CONNER, Senior D.J.:

Plaintiff Donna McGuire brings this § 1983 claim against defendants Sheila Warren and the County of Orange (the "County") claiming violations of her First and Fourteenth Amendment rights as well as breach of contract. Specifically, plaintiff claims that the defendants fired her in retaliation for a letter she wrote while serving as an independent government contractor and divested her of her property and liberty interests in her contract without due process of law. Defendants move to dismiss the Complaint under FED. R. CIV. P. 12(c) for failure to state a claim. For the reasons stated herein, defendants' motion to dismiss is granted with prejudice as to the federal claims, and plaintiff's state law breach of contract claim is dismissed without prejudice.

## BACKGROUND

This case arises out of a letter plaintiff drafted in her capacity as a government service provider. (Complt. ¶¶ 26, 27, 51-57.) For background purposes, New York State's early intervention program permits children under the age of three who have a disability or developmental delay to receive necessary services. (Defs. Mem. Supp. Mot. Dismiss at 1.) Under this program, the County must ensure that families receive services as outlined in an individualized family plan. (*Id.* at 2.) The County contracts with service providers—either individuals or social service organizations—to meet these requirements. (*Id.*)

McGuire, a certified special educator, provided early intervention and preschool services for autistic children. (*Id.* at 1; Complt. ¶¶ 5, 21.) Warren serves as the County's Director of Intervention Services. (Complt. ¶ 12.) Beginning around 1997, plaintiff and defendants entered into yearly contracts under which plaintiff would provide early intervention special education services to

qualified children for the County.  (*Id.* ¶ 6.)  On December 9, 2002, McGuire became the director of Bright Beginnings, an agency providing early intervention and preschool programs.  (*Id.* ¶ 21.)  In July 2004, McGuire signed a contract with the County requiring her to provide early intervention services for hourly remuneration.[1]  (*Id.* ¶ 25.)  Warren, as Director of Intervention Services, was responsible for supervising McGuire's contract.  (*Id.* ¶ 13.)

In providing these services at the Bright Beginnings Center, McGuire employed the applied behavior analysis (hereinafter "ABA services").  (*Id.* ¶ 8.)  This method could be performed either at a day care facility or at a child's home.  (*Id.* ¶¶ 8, 14, 17.)  From 2001 to 2004, certain parents of autistic children requested that the County provide home-based ABA services for their children.  (*Id.* ¶ 14.)  Warren allegedly opposed this request.[2]  (*Id.* ¶¶ 15, 18-19.)  Warren apparently believed McGuire supported the parent's requests, and criticized her for promoting such services. (*Id.* ¶ 16.)

The level of ABA services a child receives is determined by either the local school board or the trustees of the school district, based on recommendations made by the Committee on Preschool Special Education (hereinafter "CPSE").[3]  (Defs. Mem. Supp. Mot. Dismiss at 4.)  The CPSE is

---

[1] The record reveals that plaintiff contracted with defendant as an independent contractor for her services, even though she was serving as director of Bright Beginnings.  (Complt. ¶¶ 6, 13, 22, 23, 24.)  Apparently, "Warren disallowed independent contractors like plaintiff from offering ABA services except as part of an agency like Bright Beginnings."  (*Id.* ¶ 23.)

[2] According to the Complaint, "Warren strongly supported the provision of pre-school services in center-based settings" and "generally disfavored parental requests for pre-school ABA home-based services."  (Complt. ¶¶ 18-19.)

[3] The CPSE is created by the trustees of the school district and does not include a County representative unless specifically requested by the school district.  (Defs. Mem. Supp. Mot. Dismiss at 4.)  The CPSE is generally comprised of:

> (a) the parents of the preschool child, (b) one of the child's regular teachers (if any), (c) one of the child's special education teachers or special education providers, (d) a professional employed by the school district who is qualified to

2

responsible for determining if a child is eligible for preschool services as well as the type and level of services the child should receive. (*Id.* at 4-5.)

In August 2004, after a CPSE meeting was held concerning a specific child, the child's parent asked plaintiff to write a letter to the CPSE Chairperson supporting the continuation of services at an integrated day care center that the child was attending. (Complt. ¶ 26.) Plaintiff wrote the letter. (*Id.*) After Warren learned that plaintiff had prepared the letter and sent it to the CPSE chairperson, Warren "directed Bright Beginnings to remove [p]laintiff from all cases and not accept new cases 'until the contractual implications are reviewed by the County.'" (Defs. Mem. Supp. Mot. Dismiss at 5 (citing Complt. ¶ 27).) On September 21, 2004, Warren put in writing her directive removing McGuire from all Bright Beginnings cases effective September 17, 2004.[4] (Complt. ¶ 29.) This directive was followed by an e-mail from defendants dated September 28, 2004 that terminated

_____

provide or supervise the provision of special education and is knowledgeable about resources in the school district and municipality, (e) an additional parent of a disabled child who resides in the school district, (f) a person who can interpret the results of the child's evaluation, and may be the same member appointed in any of the above categories of professionals or teachers, and (g) anyone else designated by the school board or trustees of the school district, or the parents with knowledge or expertise regarding the child.

Defs. Mem. Supp. Mot. Dismiss at 4.)

[4] Plaintiff alleges that "Warren directly linked this decision to plaintiff's preparation of the letter supporting continued ABA services at an integrated day care center . . . ." (Complt. ¶ 29.) However, Warren alleges that the letter was sent to notify plaintiff that "she failed to follow early intervention procedural requirements." (Defs. Mem. Supp. Mot. Dismiss at 5.) Specifically, "[s]he noted that 'transition reports were to be sent to the CPSE Chairperson . . .' and that 'if the CPSE requests updated intervention in preparation for a CPSE meeting, with parental permission, the current progress notes can be shared with the CPSE committee. [Warren] advised that 'this violation follows our June meeting when we clarified once again the role and responsibility of Ms. McGuire as an [early intervention] provider.'" (Defs. Mem. Supp. Mot. Dismiss at 5 (citing Wong-Pan Decl. ¶ 4, Ex. B).)

plaintiff's contract effective October 31, 2004.[5]  (*Id.* ¶ 30.)  This "urgent" e-mail was allegedly sent to a total of 144 individuals involved in the early intervention program and announced the termination of plaintiff's contract.  (*Id.* ¶ 31; Defs. Mem. Supp. Mot. Dismiss at 6; Wong-Pan Decl., Ex. C.)  Plaintiff was not sent a copy of this e-mail nor notified that it had been sent.  (Complt. ¶ 32.) Plaintiff was afforded no opportunity to defend or explain her conduct before the e-mail was circulated.  (*Id.* ¶ 33.)

After the e-mail was sent, an attorney for Bright Beginnings allegedly contacted defendants, questioned the legal propriety of their actions and demanded that Warren specify any violation of law committed by plaintiff or Bright Beginnings.  (*Id.* ¶ 37.)  Defendants did not make a substantive response to this demand, but rather offered to reinstate plaintiff to her prior status with a new contract provided she forfeit the right to sue the defendants for wrongful termination or any other violation of her legal rights.  (*Id.* 39.)  Plaintiff refused this offer and was not permitted to resume her work for the County.  (*Id.* ¶ 40.)  On October 8, 2004, plaintiff received notice that her contract had been unconditionally reinstated.  (*Id.* ¶¶ 42-43.)  Defendants notified other providers and service coordinators by e-mail that plaintiff's contract had been reinstated.  (*Id.* ¶¶ 42-43; Defs. Mem. Supp. Mot. Dismiss at 7.)

Article 16 of the parties' contract provides a termination clause, which states:

The COUNTY may, by written notice to VENDOR effective upon mailing, terminate this Agreement in whole or in part at any time (1) for the COUNTY's convenience, (2) upon the failure of VENDOR to comply with any of the terms or conditions of this agreement, or (3) upon the VENDOR becoming insolvent or bankrupt.

(Defs. Mem. Supp. Mot. Dismiss at 7; Wong-Pan Decl., Ex. A.)

_____

[5] There is some dispute as to when plaintiff's termination became effective.  (Pl. Mem. Opp. Mot. Dismiss at 1-2.)  For our purposes, the precise date is irrelevant.

4

**DISCUSSION**

**I.    <u>Standard of Review</u>**

On a motion to dismiss, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995).  Allegations that are so conclusory that they fail to give notice of the basic events and circumstances on which plaintiff relies are insufficient as a matter of law.  *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

On a motion to dismiss pursuant to Rule 12(c), a court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff.  *See* FED. R. CIV. P. 12(c); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).  The complaint need not set forth all the evidence supporting the claim; it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 514 (2002).  Furthermore, in assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.  *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (citations omitted).

5

## II.     First Amendment Claim

To state a claim under § 1983 for retaliation in violation of the First Amendment, a plaintiff must allege: (1) that her speech was constitutionally protected; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected speech and the adverse employment action.  *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).   The First Amendment protects independent contractors from termination of an at-will contract in retaliation for exercising the right of free speech.  *See Bd. of County Com'rs v. Umbehr*, 518 U.S. 668, 678 (1996).  "To prevail, [the independent contractor] must show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized [the government] before they terminated him."  *Id.* at 685.

### A.     Constitutionally Protected Speech

For speech to be protected under the First Amendment, it must first relate to "any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the court, and must be "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 148; *see Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (Conner, J.).  In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.  *See Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999); *Hanig*, 384 F. Supp. 2d at 722.  The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned

citizen.  *See Lewis*, 165 F.3d at 163-64, *see also Hanig*, 384 F. Supp. 2d at 722.

It is unclear whether McGuire was fired in retaliation for her speech.  The Complaint indicates that Warren advocated fewer hours of home-based ABA services because she "strongly supported" preschool services in a center-based setting.  (Complt. ¶¶ 14, 15, 16, 18.)  The letter McGuire drafted and sent to the CPSE Chairperson expressed support for continuing services at an integrated day care center.  Thus the letter was in accord with Warren's apparent position.  (*Id.* ¶ 26.)  We fail to see how McGuire can be fired in retaliation for a letter supporting Warren's position.

Even if this is incorrect, plaintiff asserts that her speech is protected because "speech centered around the care and education of special education students touche[s] upon matters of public concern."  (Pl. Mem. Opp. Mot. Dismiss at 8 (citing *Fales v. Garst*, 235 F.3d 1122, 1124 (8th Cir. 2001)).)  However, plaintiff's reliance on this statement is misplaced.  In *Fales*, the court stated that "speech touches upon [a] matter of public concern when it is a matter of political, social, or other concern to community, but not when [an] employee speaks upon matters of only personal interest."  235 F.3d at 1124 (citing *Kincade v. City of Blue Springs*, 64 F.3d 389, 395 (8th Cir.1995)).  As the Second Circuit has observed, "the mere fact that one or two of [the] comments could be construed broadly to implicate matters of public concern does not alter the general nature of [the] statements."  *Ezekwo v. N.Y. City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991).

Home-based ABA services may be an important issue, however it "do[es] not necessarily become a matter[] of public concern simply because in different circumstances the opinions might become the topic of general interest to the public."  *Flynn v. N.Y. City Bd. of Educ.*, No. 00 Civ. 3775, 2002 WL 31175229, at *7 (S.D.N.Y. Sept. 30, 2002).  In the present context the speech is not constitutionally protected because plaintiff was not addressing an issue of general concern for the public.  The letter concerned where one student should receive his preschool services and whether

7

he was progressing at his present level of services.  (Defs. Mem. Supp. Mot. Dismiss at 13-14.)
Although plaintiff's opinion may have been based on professional judgment, it does not necessarily
follow that this speech was constitutionally protected.

Plaintiff further asserts that the letter was not of personal interest to her.  (Pl. Mem. Opp. Mot.
Dismiss at 5, 7.)  However, the parent requested that plaintiff provide the letter to the CPSE
Chairperson, and plaintiff chose to provide the letter.  (Complt. ¶ 26.)  The Complaint indicates that
plaintiff, at the request of parents, would "update relevant review committees concerning the
progress of children she was assigned to assist" and that "[p]*laintiff* reasonably deemed this to be part
of the services she provided." (*Id.* ¶¶ 9, 10 (emphasis added).)  If plaintiff so believed, that belief was
not reasonable.  She clearly acted outside of the scope of her contractual duties and in support of the
personal interests of the parents and child.

### B.        The Balance of Interests

Even if the speech is constitutionally protected, the government may still terminate an
employee if the termination "may be justified when legitimate countervailing government interests
are sufficiently strong."  *Umbehr*, 518 U.S. at 675.  "To determine the extent to which a state may
regulate the speech of its employees, the courts must balance 'between the interests of the
[employee], as a citizen, in commenting upon matters of public concern and the interest of the State,
as an employer, in promoting the efficiency of the public services it performs through its
employees.'" *Flynn*, 2002 WL 31175229, at *5 (citing *Pickering v. Bd. of Educ. of Twp. High Sch.
Dist. 205*, 391 U.S. 563, 568 (1968)).  The government will prevail if its "legitimate interests as a
contractor, deferentially viewed, outweigh the free speech interests at stake." *Umbehr*, 518 U.S. at
685.

8

Even if we had determined that the speech was constitutionally protected, McGuire's claim would still fail because the government has a legitimate interest as a contractor to ensure that the law is followed by those with whom it contracts.  McGuire was not following early intervention procedural requirements.  Indeed, she had been reprimanded for her failure to do so on at least one past occasion.  The government's interest in terminating the contract outweighs her interest in free speech.  Since the speech is not constitutionally protected, there is no need to address the other two elements of the § 1983 claim.

III.    **Fourteenth Amendment**

Plaintiff alleges that she was divested of her property and liberty interests under her contract without due process.  (Complt. ¶¶ 53, 54.)  The Fourteenth Amendment protects an individual's liberty and property from deprivation by a state government employer without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  To establish a due process violation claim, the plaintiff must: (1) specify the property or liberty interest at stake; (2) demonstrate that the government has deprived her of that right; and (3) show that the deprivation was achieved without due process.  *See Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990).

A.    **Property Interest**

In order for plaintiff to prevail upon her claim, she must first establish the existence of a valid property interest.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Protected interests are not created by the Constitution: "they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Id.* However, "it is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983. There is a distinction between the breach of an ordinary contract right and the deprivation of a protectible property interest within the meaning of the due process clause." *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988). Although case law has "accorded procedural due process protection to interests that 'extend well beyond actual ownership of real estate, chattels, or money,'" the Second Circuit has "hesitate[d] to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966-67 (2d Cir. 1988) (citing *Roth*, 408 U.S. at 572). In *S & D Maintenance Company*, the plaintiffs claimed that their contract with New York City to provide maintenance for parking meters created a property interest. *Id.* The Second Circuit held that a property right did not exist because, under the terms of the contract, the city had the right to terminate the contract without cause. *Id.* at 967.

It is undisputed that plaintiff is an independent contractor. (Pl. Mem. Opp. Mot. Dismiss at 12; Defs. Mem Supp. Mot. Dismiss at 17.) Article 16 of the parties' contract provides that the agreement can be terminated "(1) for the COUNTY'S convenience, (2) upon failure of VENDOR to comply with any of the terms or conditions of the agreement, or (3) upon the VENDOR becoming insolvent or bankrupt." (Wong-Pan Decl., Ex. A.) This broad contract termination provision allows plaintiff to be terminated without cause and, as in *S & D Maintenance Company*, prevents the creation of a property interest in the contract. *See* 844 F.2d at 966-67.

This reasoning is not altered by the fact that the parties have renewed their contract for several years. McGuire signed a contract similar to the one in dispute every year since 1997.

10

(Complt. ¶ 6.)  In *Abramson v. Pataki*, the plaintiffs attempted to argue that they had a property right in their jobs at the Jacob Javits Center because their employment was part of  "the long-standing practices of the Javits Center."  278 F.3d 93, 100 (2d Cir. 2002).  While the Second Circuit panel was unsure what the phrase "long-standing practices" meant, they reasoned that "assuming that the Javits Center has always, since its opening in 1985, employed the appellants in its work, that circumstance would not create a protectable interest in their continued employment."  *Id.* at 100-101.  That reasoning is applicable here.  Even if the parties had a continued contractual relationship since 1997, it does not follow that this continued relationship would create a property interest.

### B.   Liberty Interest

An entity may have a liberty interest in maintaining its good name, and thus may be entitled to a hearing to clear any damage done to its reputation.  *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir. 1991) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437-39 (1971)).  A liberty interest is at stake when the government's action places on an injured party "a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573.  "To prevail on such a liberty-interest claim, a plaintiff must establish that the information was stigmatizing, false, and publicized by the state actor."  *Kelly Kare*, 930 F.2d at 177 (citing *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir. 1987)); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980).

The termination of a contract will not amount to a deprivation of a liberty interest simply because it becomes public knowledge if there was "nothing false or sufficiently stigmatizing flowing from this without-cause termination that would amount to a deprivation of a liberty interest." *Kelly Kare*, 930 F.2d at 177.  The Second Circuit has said:

11

> A free-floating liberty interest cannot rest on speculation that negative implications will flow from a termination without cause.  The supposed consequences, if any, are too attenuated from the state action.  To recognize such a right would create a liberty-interest claim whenever a state actor exercised a contractual option to terminate a government contract without cause.  This we refuse to do.

*Id.*

Here, defendants had the right to terminate plaintiff's contract without cause.  The notice of termination was sent via e-mail to early intervention and preschool professionals.  The e-mail contained no language that was stigmatizing or false.  The e-mail simply read "Please see the attached memo regarding the termination of three provider contracts within Orange County." (Wong-Pan Decl., Ex. C.) The remainder of the e-mail indicated which providers, including plaintiff, were terminated and that a list of new providers would be given to anyone affected by the change. The subject line of the e-mail is "Urgent-Please Read."  (*Id.*)  Under no construction is this false or stigmatizing.  It simply indicates to the reader that the e-mail needs to be read promptly and provides important information.  Plaintiff points to the fact that 144 people apparently received this e-mail. However, these individuals received the e-mail because they were affected by this change and needed to be notified that they would have a new service provider.  Plaintiff has not been stigmatized or disabled by the government's action, and therefore has not been deprived of a liberty interest.

## IV.   <u>Remaining State Law Claim</u>

A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  When determining whether to exercise supplemental jurisdiction, a district court has "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a

particular case." *Yaba v. Cadwalader, Wickersham & Taft*, 931 F. Supp. 271, 275 (S.D.N.Y. 1996)

(quoting *Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir. 1992)).  Accordingly, as all federal claims

have been dismissed, we exercise our discretion and decline to retain supplemental jurisdiction over

plaintiff's remaining state law breach of contract claim.


## CONCLUSION

For all of the foregoing reasons, defendants Sheila Warren and the County of Orange's

motion to dismiss is granted with prejudice as to the federal claims, and plaintiff's state law breach

of contract claim is dismissed without prejudice.


SO ORDERED.

Dated:  White Plains, New York
          December 9, 2005


_____
Sr. United States District Judge


13