UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

DONNA McGUIRE,                          :

                    Plaintiff,          :

        - against -                     :

SHEILA WARREN, sued in her Individual   :
Capacity,
                                        :
                    Defendants.
                                        :
- - - - - - - - - - - - - - - - - - - - X

**ECF CASE**

05 Civ. 2632 (WCC)

**OPINION
AND ORDER**


**A P P E A R A N C E S :**

                              SUSSMAN & WATKINS
                              **Attorneys for Plaintiff**
                              40 Park Place
                              P.O. Box 1005
                              Goshen, New York  10924

MICHAEL H. SUSSMAN, ESQ.

        Of Counsel


                              DAVID L. DARWIN
                              COUNTY ATTORNEY FOR ORANGE COUNTY
                              **Attorneys for Defendant**
                              255 Main Street
                              Goshen, New York  10924

LAURA WONG-PAN,
   Sr. Asst. County Attorney

        Of Counsel


**Copies E-Mailed to Counsel of Record**

**CONNER, Sr. D.J.:**

On March 8, 2005, plaintiff brought this action pursuant to 42 U.S.C. § 1983 against Sheila Warren ("Warren") and the County of Orange (the "County") alleging that defendants terminated her contract in retaliation for her engaging in protected speech in violation of the First Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment.   In an Opinion and Order, dated December 9, 2005 (the "12/9/05 Opinion"), this Court dismissed plaintiff's Complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6).   Plaintiff appealed our decision to the United States Court of Appeals for the Second Circuit, which affirmed our dismissal of plaintiff's due process claims but held that plaintiff "might be able to amend her complaint" to state a viable claim for First Amendment retaliation.  *See McGuire v. Warren* ("*McGuire II*"), 207 F. App'x 34, 36 (2d Cir. 2006).   The court therefore  "remand[ed] the matter . . . solely for the purpose of permitting [plaintiff] to make, within 45 days of the issuance of the mandate [t]herein, a motion to serve and file an amended complaint . . . ."  *Id.* at 37.   Plaintiff now moves, albeit tardily, for leave to file her proposed Amended Complaint, which alleges one cause of action against Warren for First Amendment retaliation.  For the reasons that follow, plaintiff's motion is granted.

## BACKGROUND

The relevant facts are set forth in our 12/9/05 Opinion, the familiarity of which is presumed.[1] In brief, the Complaint alleged that plaintiff, a certified special educator, entered into annual contracts with the County to provide early intervention and pre-school services for autistic children,

---

[1] Our 12/9/05 Opinion is reported at *McGuire v. Warren* ("*McGuire I*"), 404 F. Supp. 2d 530 (S.D.N.Y. 2005).

1

including applied behavior analysis ("ABA") instruction.  (*See* Complt. ¶¶ 5-8.)  In July 2004, the

County renewed plaintiff's contract under which she was paid on an hourly basis.  (*See id.* ¶ 25.)

Warren, as Director of Intervention Services for the County's Department of Health, was responsible

for overseeing plaintiff's contract.[2]  (*See id.* ¶¶ 12-13.)

At the request of the parents of the children to whom she provided services, plaintiff would

often issue progress reports to certain review committees[3] that would recommend to the County the

appropriate services for the child.  (*See id.* ¶ 9.)  Plaintiff alleges that Warren often opposed parents'

requests for home-based ABA services and, on several occasions, advocated fewer hours of home-

---

[2] Although it is unclear from the Complaint, it appears that, on December 9, 2002, plaintiff began working for Bright Beginnings, an agency that provides individualized, developmentally appropriate services to children from birth to five years of age in accordance with New York State Department of Health guidelines, presumably because Warren would contract only with providers associated with agencies like Bright Beginnings.  (*See id.* ¶¶ 21, 23.)

[3] As we explained in our prior Opinion and Order:
The level of ABA services a child receives is determined by either the local school board or the trustees of the school district, based on recommendations made by the Committee on Preschool Special Education (the "CPSE").  The CPSE is created by the trustees of the school district and does not include a County representative unless specifically requested by the school district.  (Defs. Mem. Supp. Mot. Dismiss at 4.) The CPSE is generally comprised of:
  (a) the parents of the preschool child, (b) one of the child's regular teachers (if any), (c) one of the child's special education teachers or special education providers, (d) a professional employed by the school district who is qualified to provide or supervise the provision of special education and is knowledgeable about resources in the school district and municipality, (e) an additional parent of a disabled child who resides in the school district, (f) a person who can interpret the results of the child's evaluation, and may be the same member appointed in any of the above categories of professionals or teachers, and (g) anyone else designated by the school board or trustees of the school district, or the parents with knowledge or expertise regarding the child.

*McGuire I*, 404 F. Supp. 2d at 534 n.3.

based ABA than requested by the parents. (*See id.* ¶¶ 15, 19.) According to the Complaint, Warren strongly urged the provision of services in center-based settings rather than in the home. (*See id.* ¶¶ 18, 19.) Plaintiff alleged that Warren believed that plaintiff supported the parent's requests, and criticized her for promoting such services. (*Id.* ¶¶ 16, 20.)

In August 2004, a parent requested that plaintiff send a letter to CPSE "expressing support for the continuation of services at an integrated day care center which the child was attending." (*See id.* ¶ 26.) Plaintiff sent the letter, and Warren shortly thereafter terminated her contract with the County. (*See id.* ¶¶ 27-31, 34.) The Complaint alleges that "[d]efendants terminated plaintiff's contract because she engaged in protected speech in support of educational programs she believed necessary for those children she was assigned to assist." (*See id.* ¶ 36.) This Court dismissed the Complaint because the August 2004 letter did not constitute protected speech under the First Amendment, as it was written pursuant to plaintiff's official duties and, dealing only with a single child's specific needs, it did not address an issue of public concern. *See McGuire I*, 404 F. Supp. 2d at 536-37.

The Second Circuit agreed, but noted that "[t]he August 2004 letter may not be the only speech relevant to McGuire's claim . . . ." *McGuire II*, 207 F. App'x at 36. It explained that "[t]he complaint also discusse[d] the parties' conflicting views on the proper method of providing certain kinds of educational services to children." *Id.* The court concluded that "it is possible to read the allegations in the complaint to allege that the adverse employment actions allegedly taken by the defendants against McGuire were in retaliation for statements she made more broadly about the provision of services to special needs children as a group, which might well be a matter of public interest." *Id.* The court emphasized, however, that plaintiff did not allege that she was speaking as

3

a concerned citizen, and stated:

> Her allegations assert, instead, that she was acting pursuant to her responsibilities as a contractor at the time of the particular speech she identifies in the complaint.  In *Garcetti v. Ceballos*, — U.S. — , 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), which was decided after the complaint was filed and the motion for judgment on the pleadings was granted by the district court, the Supreme Court decided: "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 1959.  For that reason alone, the district court's judgment on the pleadings was, on the basis of *Ceballos*, proper.

> McGuire might be able to amend her complaint in light of *Ceballos* to include specific allegations as to specific statements she may have made about a matter of public concern as a private citizen that were a "motivating factor" for the alleged adverse employment action against her; indeed, McGuire's counsel asserted at oral argument that she could add such allegations if given the opportunity.  We therefore vacate the judgment of the district court and remand the matter to the district court solely for the purpose of permitting McGuire to make, within 45 days of the issuance of the mandate herein, a motion to serve and file an amended complaint pursuant to Federal Rule of Civil Procedure 45 [sic] . . . .

*Id.* at 36-37.

Plaintiff now moves this Court for leave to file an amended complaint alleging specific incidents where plaintiff expressed her opposition to the County's provision of services to autistic children.  Specifically, in plaintiff's proposed Amended Complaint, she alleges that, on July 30, 2004, she attended a meeting hosted by Warren at which she "voiced her general concerns that the hours of service provided by Warren's office to autistic children did not follow the guidelines provided by New York State and were truly inadequate for these children."  (*See* Am. Complt. ¶ 8.)  Plaintiff also alleges that, at the meeting, she indicated that "many autistic children learn best when provided a mainstream pre-school classroom and ABA services both in those rooms and at home, contrary to the practices defendant favored."  (*See id.* ¶ 9.)  According to plaintiff, Warren responded, "'I said it once and I'll say it again.  Children belong in center-based programs,'" and advised those

4

attending the meeting that "they should '[r]emember who [they] work for.'" (*See id.* ¶¶ 10-11.)

In addition, plaintiff alleges that, on May 7, 2003, plaintiff and other staff associated with Bright Beginnings met with Warren at the Clarion Hotel in Newburgh, New York. (*See id.* ¶ 12.) At the meeting, Warren explained that she believed that the "Family Training Model," which was designed to assist family members in interacting with their autistic child, was a more effective approach than ABA instruction, and that children who needed services prior to attending school belonged in "center-based programs." (*See id.* ¶¶ 13-15.) In response, plaintiff suggested that implementation of the "Family Training Model" would not satisfy the state guidelines, which require twenty to forty hours of ABA instruction for autistic children. (*See id.* ¶ 17.) She also indicated that the "policies adopted by the [C]ounty did not promote the education of autistic children in the least restrictive environment and that changes in the scheduling of pre-school C[P]SE meetings would disallow parental and Early Intervention instructor participation, contrary to federal and state regulations." (*See id.* ¶ 18.) She alleges that her comments "concerned matters of public importance and were not case-specific comments made by an employee to her employer." (*See id.* ¶ 20.) Plaintiff claims that, in retaliation for these statements, Warren terminated plaintiff's contract with the County. (*See id.* ¶ 22.)

Warren opposes plaintiff's motion for leave to file the proposed Amended Complaint on two grounds. First, she argues that plaintiff's counsel did not file the motion for leave until March 5, 2007, fourteen days after the filing deadline imposed by the Second Circuit panel, and because we are bound by its mandate, we must deny her motion as untimely. Second, Warren contends that plaintiff's proposed Amended Complaint fails to state a claim upon which relief can be granted and, accordingly, the proposed amendment is futile.

## DISCUSSION

### I.  <u>Legal Standard</u>

FED. R. CIV. P. 15 provides that leave to file an amended complaint should "be freely given when justice so requires."  As the Supreme Court stated, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Second Circuit and this Court have interpreted the *Foman* standard to allow amendments, even if there was substantial delay in seeking the same, unless the movant has acted in bad faith, the amendment will prejudice the nonmovant, or the amendment is futile.  *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (noting that a motion to amend should be denied only for undue delay, bad faith, futility or prejudice to opposing party; mere delay alone, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend) (citations omitted); *Posadas de Mexico, S.A. de C.V. v. Dukes*, 757 F. Supp. 297, 300 (S.D.N.Y. 1991) (Conner, J.) (recognizing that leave to amend should be given unless the motion for leave is the product of bad faith or dilatory motive, or amendment will prejudice the adversary or be futile).  "In this Circuit, an amendment is considered futile if the amended pleading fails to state a claim, or would be subject to a motion to dismiss on some other basis."  *Tri-State Judicial Servs., Inc., v. Markowitz*, 624 F. Supp. 925, 926 (E.D.N.Y. 1985) (internal citations omitted); *see also S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.

1979) ("A trial court does not abuse its discretion in denying leave to amend a complaint which even

as amended would fail to state a cause of action.").  The decision of whether to grant leave to amend

is within the sound discretion of the district court.  *See, e.g.*, *Foman*, 371 U.S. at 182.


## II.     Untimeliness of Plaintiff's Motion

First, Warren argues that plaintiff's motion for leave should be denied because her counsel

filed it fourteen days after the filing deadline imposed by the Second Circuit.  Plaintiff's counsel

offers no excuse for his delay, except for the existence of "other commitments," (*see* Sussman Aff'm

¶ 3) and, despite his familiarity with the chambers of this Court and its practices, he made no attempt

to inform the Court that he would be unable to file the motion within the time period set by the

appellate court.  However negligent he may have been, there is no evidence that counsel acted with

a dilatory motive or in bad faith.  Moreover, Warren does not, and cannot, contend that plaintiff's

fourteen-day delay prejudiced her in any significant measure, and the fact remains that plaintiff's

claims are still timely under the applicable three-year statute of limitations.  Accordingly, the

untimeliness of plaintiff's motion does not, under the circumstances, warrant the imposition of the

harsh remedy of denying her leave to file an amended complaint, which should always be freely

granted, particularly when prompted by order of a higher court.[4]

---

[4] The cases cited by defense counsel for the proposition that we are bound by the Second Circuit's filing deadline and therefore lack discretion to allow plaintiff to file her Amended Complaint are factually inapposite.  *See Briggs v. Pennsylvania R. Co.*, 334 U.S. 304 (1948) (improper for district court to add interest to a judgment to account for the time from the original entry of the judgment to appeal and remand when the mandate of the Circuit Court of Appeals had made no provision for interest); *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69-70 (2d Cir. 1992) (improper for district court to elect not to remove a paragraph from its judgment that the Second Circuit specifically instructed it to remove).  Clearly, it would be against the spirit of the Second Circuit panel's decision  if we were to deny plaintiff the opportunity to file an amended complaint

III.    **Futility of Plaintiff's Proposed Amended Complaint**

Warren further argues that plaintiff's proposed Amended Complaint fails to state a claim for First Amendment retaliation and the proposed amendment is therefore futile.  Although the allegations in plaintiff's proposed Amended Complaint are somewhat suspect in light of the fact that she has totally abandoned the gravamen of her initial Complaint and drafted her new allegations to perfectly mirror the Second Circuit's decision, we must accept all well-pleaded allegations as true and draw all inferences in favor of the pleader when evaluating a motion pursuant to FED. R. CIV. P. 15.  *See Savitsky v. Mazzella*, No. 98 Civ. 9051, 2004 WL 2454120, at *3 (S.D.N.Y. Nov. 1, 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  Read in such a light, plaintiff's allegations clearly state a cause of action for First Amendment retaliation.

To state a claim under § 1983 for retaliation in violation of the First Amendment, plaintiff must plausibly allege that: (1) her speech was constitutionally protected; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected speech and the adverse employment action. *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004); *McGuire I*, 404 F. Supp. 2d at 536.  Warren first argues that plaintiff did not engage in constitutionally protected speech.

For a public employee's speech to be protected under the First Amendment, it must first

---

because her counsel filed the moving papers fourteen days late, particularly when Warren was not prejudiced and plaintiff's claims are still timely under the applicable statute of limitations.  *See In re Ivan F. Boesky Sec. Litig.*, 957 F.2d at 69 ("The district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate.") (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).  Moreover, denying plaintiff's motion on this ground would run contrary to FED. R. CIV. P. 15(a) and the seminal Supreme Court case of *Foman* and all its progeny.

relate to "any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the court, and must be "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48; *see Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (Conner, J.).   In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose. *See Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999); *Hanig*, 384 F. Supp. 2d at 722.   The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned citizen. *See Lewis*, 165 F.3d at 163-64; *Hanig*, 384 F. Supp. 2d at 722.

In her proposed Amended Complaint, plaintiff alleges that she made various statements to Warren expressing concern that autistic children residing in the County were not receiving the appropriate care.  She contends that her statements were not limited to particular children with whom she was working, but rather, were relevant to all autistic children receiving services in the County. We agree.

Plaintiff's allegations make clear that her statements touched upon disagreements over the effectiveness of certain treatment and intervention models and apparently were representative of the discourse among experts skilled in the treatment of autism[5] – undoubtedly a disorder about which

---

[5] Experts disagree as to the effectiveness of the treatment and intervention methods, which include: chelation therapy, behavior modification, including ABA, dietary intervention, sensory integration dysfunction, occupational therapy, physical therapy, speech therapy, music therapy, vision therapy, relationship development intervention and hyperbaric oxygen therapy.

medical professionals wish they knew more.[6]  Moreover, according to plaintiff, her statements broached whether the County's provision of services complied with existing state law, which, according to plaintiff, required a certain amount of ABA services.[7]  *See Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002); *Hanig*, 384 F. Supp. 2d at 722 ("[S]peech involving an employer's violation of state law will often be a matter of social and political concern . . . .").  ABA therapy, which often calls for one-on-one instruction, is becoming more popular among parents and private providers but is more costly for county and municipal governments to implement.[8]

---

[6] To date, no one has found the exact cause of autism.  The National Autism Association explains:

> It's important to note that in the past 10 years of looking for the "autism gene," none has been found which leads many researchers to believe that something had to TRIGGER the gene to turn on and cause autism.
> According to officials at the National Institutes of Health, while there is most likely a genetic predisposition, there must also be an environmental component to autism.  The rapid rise in the rate of autism over the last 15 years cannot be attributed solely to genetics.
> Autism is no longer considered a heritable, genetic disorder.  It is an environmentally triggered, therefore preventable and treatable disease.  Environmental research holds the key to finding the cause and developing effective treatments for those affected.

*See* http://www.nationalautismassociation.org/causes.php.

[7] Notably, on a motion to dismiss, the veracity of plaintiff's statement, *i.e.*, whether the County in fact was complying with state law, is not at issue in determining whether the statements are afforded First Amendment protection.  *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 167 (2d Cir. 2006) ("The truth of [the plaintiff's] statements, especially on summary judgment, does not bear on whether the speech is personal or public [for purposes of First Amendment retaliation].").

[8] One method of ABA therapy know as the Lovas method involves:
[S]haping behavior through reinforcement of successive approximations, prompting and fading procedures, and use of positive reinforcers that are child-specific and functional (i.e., serve the intent of increasing behavior). Examples of such reinforcers are small bites of food, playing with a favorite toy, looking at a favorite book, and social rewards such as verbal praise, tickles, hugs, and "rides through the air."

10

Indeed, as more children are diagnosed with autism,[9] plaintiff's statements may reasonably be considered to relate to a major public health issue involving our youngest and most vulnerable children – clearly a matter of great public concern.  *See Cioffi*, 444 F.3d at 165 (finding that an athletic director's statements regarding student hazing and the school's failure to take remedial action is a matter of public concern); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 553 n.4 (2d Cir. 2001) (finding that speech regarding the safety of young children in horse shows at a government funded cooperative is a matter of public concern); *Hale v. Mann*, 219 F.3d 61, 71 (2d Cir. 2000) (finding that statements by a former director of a state juvenile detention facility regarding "the proper administration of State facilities for the incarceration of juveniles" was a matter of public concern); *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) (public school teacher's "statements regarding the quality of education provided by the public school as measured by achievement test scores and their year-to-year improvement or deterioration on a schoolwide basis may reasonably be considered a matter of public concern."); *Morey v. Somers Cent. Sch. Dist.*, No. 06 Civ. 1877, 2007 WL 867203, at *9 (S.D.N.Y. Mar. 21, 2007) (Conner, J.) (finding that a school custodian's repeated statements revealing the existence of asbestos in the school gymnasium is a matter of public concern); *see also Cook v. Gwinnett County Sch. Dist.*, 414 F.3d

---

As intervention progresses, reinforcement is expanded, whenever possible, to include more natural and social reinforcers. The intervention is structured so that appropriate behaviors are maximized through prompting and positive reinforcement. Inappropriate behaviors are reduced by teaching alternate, more socially acceptable forms of communicating the same needs.

*See* http://www.lovaas.com/services_consultation.php.

[9] According to the National Autism Association, one in one hundred and fifty children in the United States are now being diagnosed with autism.
*See* http://www.nationalautismassociation.org/index.php.

1313, 1319 (11th Cir. 2005) (finding that the plaintiff's statements to coworkers about the safety of children as affected by bus overcrowding and the lack of time for pre-trip bus inspections was of public concern).  Plaintiff's statements were not "mere private employment grievance[s]"; in fact, they were unrelated to plaintiff's specific job tasks as an ABA instructor.  *See Cioffi*, 444 F.3d at 165.  Accepting plaintiff's allegations as true, as we must, it is clear that plaintiff's alleged statements are protected under the First Amendment for purposes of her retaliation claim.  Indeed, the prospect of the present allegations was the precise reason for the Second Circuit's decision to remand.  *See McGuire II*, 207 F. App'x at 36 ("[I]t is possible to read the allegations in the complaint to allege that the adverse employment actions allegedly taken by the defendants against McGuire were in retaliation for statements she made more broadly about the provision of services to special needs children as a group, which might well be a matter of public interest.").

Defense counsel contends, citing *Ceballos*, that plaintiff's alleged speech is not protected under the First Amendment because she made the statements in her role as an early intervention provider and not a concerned citizen.  (*See* Def. Mem. Opp. Pl. Mot. at 10.)  In *Ceballos*, the Court held that a deputy district attorney did not engage in protected speech when he recommended the dismissal of a pending criminal case because he made the statements pursuant to his official duties.  *See* 126 S. Ct. at 1955-56, 1959-60.  The Court noted that although "[t]he First Amendment protects some expressions related to the speaker's job[,]" it does not protect those that are part and parcel of the speaker's professional activities.  *See id.*, 126 S. Ct. at 1960.

In the present case, it was not plaintiff's professional responsibility to challenge Warren's views on the various methods of treatment and intervention for autistic children.  This is wholly distinguishable from the circumstances surrounding the August letter at issue in plaintiff's initial

Complaint, which plaintiff admitted she drafted pursuant to her duties as an early intervention provider and which related to one particular child with whom she worked.  Although the subject matter of her alleged statements in the proposed Amended Complaint invariably relate to her past professional activities with the County, she was not speaking in her official capacity.  Rather, she merely voiced her concern regarding the County's provision of services to autistic children.  The fact that she was speaking on the general subject matter of her employment is inconsequential under the present circumstances.  *See Ceballos*, 126 S. Ct. at 1960 (explaining that the First Amendment applies particularly when government employees discuss matters of public concern that relate to their job).[10]  Accordingly, plaintiff has sufficiently alleged that her statements are constitutionally protected for purposes of her First Amendment retaliation claim.

Warren next contends that plaintiff's proposed Amended Complaint fails to allege sufficient facts to establish a causal connection between her protected speech and the adverse employment action.  (*See* Def. Mem. Opp. Pl. Mot. at 11-13.)  In order to establish a causal connection at the pleading stage, the "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003) (internal citation omitted); *see also Shekhem' El-Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y.

---

[10] As the Supreme Court explained:
[Ceballos's] memo concerned the subject matter of Ceballos'[s] employment, but this . . . is nondispositive.  The First Amendment protects some expressions related to the speaker's job.  As the Court noted in *Pickering*: "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent.  Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."  The same is true of many other categories of public employees.
*Ceballos*, 126 S. Ct. at 1959 (internal citations omitted).

2006).  On a motion to dismiss, a reasonable inference of a causal connection is all that is required.  *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999) ("[T]he plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could reasonably support an inference to that effect."); *Rivera v. Cmty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 309 (S.D.N.Y. 2001).  This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus."  *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *see also Chang v. Safe Horizon*, No. 03 Civ. 10100, 2005 U.S. Dist. LEXIS 19015, at \*25 (S.D.N.Y. Sept. 1, 2005).

In the present case, plaintiff alleges that Warren terminated her contract in September 2004 in retaliation for statements that she made on May 7, 2003 and  July 30, 2004.[11]  (*See* Am. Complt. ¶¶ 5, 8-9, 12, 16-18.)  Viewing these facts in the light most favorable to plaintiff, the termination of her employment followed her protected statements by only one or two months.  Such temporal proximity undoubtedly precludes dismissal on a motion pursuant to FED. R. CIV. P. 12(b)(6).  *See Gorman-Bakos*, 252 F.3d at 555 (holding that a four-month interval was "sufficient to support an

---

[11] Warren argues that plaintiff's comments at the July 30, 2004 are irrelevant to our analysis of whether a causal connection exists because her statements on that day were "vague and innocuous."  (*See* Def. Mem. Opp. Pl. Mot. at 13.)  We disagree.  At this meeting, plaintiff "voiced her general concern that the hours of service provided by Warren's office to autistic children did not follow the guidelines provided by New York State and were truly inadequate for these children."  (*See* Am. Complt. ¶ 8.)  Plaintiff also alleges that she "stated that many autistic children learn best when provided a mainstream pre-school classroom and ABA services both in those rooms and at home, contrary to the practices defendant favored."  (*See id.* ¶ 9.)  Indeed, Warren's alleged reaction to plaintiff's statements contradicts any characterization of plaintiff's statements as innocuous.  (*See* Am. Complt. ¶ 10 ("At this meeting, Warren responded, 'I said it once and I'll say it again.  Children belong in center-based programs.'"), ¶ 11 ("At the end of this meeting, Warren advised those attending that they should 'Remember who you work for.'").

allegation of a causal connection strong enough to survive a summary judgment motion"); *Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465, 473 (E.D.N.Y. 2006) ("Though there is no bright-line rule, an adverse employment action following within a couple [of] months of the protected activity typically, indirectly establishes the causal connection.").

In addition, plaintiff alleges several facts evidencing that Warren may have acted with improper motive and in bad faith.  She alleges that Warren reacted with hostility toward plaintiff on both occasions when plaintiff criticized the County's provision of services to autistic children.  (*See* Am. Complt. ¶¶ 10, 11, 21.)  In particular, plaintiff claims that, after the July 30, 2004 meeting, Warren stated to the attendees that they should "[r]emember who [they] work for."  (*See* Am. Complt. ¶ 11.)  Plaintiff also alleges that Warren vehemently disagreed with plaintiff's opinions regarding home-based versus center-based programs.  Finally, it appears that Warren did not offer a reason for the County's decision to terminate plaintiff's contract.  (*See* Am. Complt. ¶ 22.)  Plainly, plaintiff's allegations are sufficient to plead a causal relationship between the termination of her contract and her alleged protected speech.  Because plaintiff's allegations in her proposed Amended Complaint appear to be sufficient to state a claim for First Amendment retaliation, her proposed amendments cannot be deemed futile.  Accordingly, plaintiff's motion for leave must be granted.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file her proposed Amended Complaint is granted.  Plaintiff must file her Amended Complaint within ten days of the issuance of this Opinion and Order.


SO ORDERED.
Dated: White Plains, New York
      May 11, 2007

_William C. Conner_
Sr. United States District Judge

16