UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DONNA MCGUIRE,

                              Plaintiff,                  **RULE 56.1 STATEMENT**

      -against-                                               05 CIV. 2632 (WCC)

SHEILA WARREN, sued in her Individual
Capacity,

                              Defendant.
-----------------------------------------------------------------x

       The defendant, Sheila Warren, by her attorneys in the office of David L Darwin, Esq., Orange County Attorney, as and for her Rule 56.1 Statement, assert that there are no genuine issues of material fact with respect to the following issues:

       1.      Since 1996, Ms. McGuire and the County of Orange have been parties to a series of contracts which required Ms. McGuire to provide special education services to children who were eligible to receive those services through New York State's early intervention program. (McGuire Depo. at 18-20). Ms. McGuire has also been a contractor for Bright Beginnings Family Services ("Bright Beginnings") since approximately 2001 or 2002, and provides services to children through New York State's early intervention program and its preschool special education program, as a representative of Bright Beginnings. (McGuire Depo. at 12-14).

       2.      New York's early intervention program is managed by the Commissioner of the New York State Department of Health. (Public Health Law ¶2540, 2542). The program permits children under the age of three who are deemed eligible, to receive services to help them to overcome disabilities or developmental delays. (Public Health Law §2545). Services that may be authorized through the early intervention program include those services described at Public

1

Health Law §2541(6)(h).

    3.    The County of Orange has certain administrative and fiscal responsibilities over the early intervention program and the preschool special education program within Orange County. (New York Public Health Law §2552; New York Education Law §§4410, 4410-b All providers, including Ms. McGuire, submit billing statements to the County and are compensated in accordance with State-approved reimbursement rates. (Warren Depo. at 34; 10 NYCRR §69-4.30).

    4.    Since 1993, defendant Sheila Warren has been the County's Director of Intervention Services and the Early Intervention Official ("EIO"). (Warren Depo. at 6, 12, 30). The EIO has various responsibilities, including ensuring that children referred for services are evaluated to determine if they are eligible (Public Health Law §2544), and designating an "initial service coordinator" assigned to coordinate services for eligible children. (Public Health Law §2543). The EIO also works with a team to develop an IFSP for the child (Public Health Law §2543, 2545), and notifies the Committee on Preschool Special Education (CPSE) of children reaching the age of three who are potentially eligible for preschool services under Education Law §4410 (Public Health Law §2548).

    5.    After the age of three, children who are eligible for special services are entitled to continue those services if approved by the school district's CPSE. (Education Law §4410). The CPSE, not the EIO, has the authority to make a final determination on services to be provided to children who have exceeded the age limit for early intervention services, which is usually three years of age.

    6.    The CPSE is established by the trustees of the school district. (Education Law §4410(3)(1)). The CPSE includes the individuals identified at Education Law §4410(3)(1)).

Decisions concerning whether the child is eligible for preschool services, and the type and level of services to be provided to that child, are determined in the final instance by the CPSE. (Education Law §4410(4)-(5)).

7. The CPSE has the responsibilities described at Education Law §4410. The parent has the right to request a hearing or mediation to resolve any disagreements that the parent has with the CPSE's recommendations concerning services to be provided to the child. (Education Law §4410(7).

8. The County is provided with the contact information for providers authorized by the New York State Department of Education to perform services to preschool aged children. (Education Law §4410, Warren Depo. at 190-191). The providers enter into a contract with the County of Orange and are added to the provider list that is distributed to ongoing service coordinators and other individuals and entities involved in the provision of services to preschool aged children. (Warren Depo. at 191).

9. During the time she has been an Orange County contractor, Ms. McGuire has also worked full-time as a special education teacher in the Monroe-Woodbury School District. (McGuire Depo. at 18). On or about October 24, 2002, she was named as Bright Beginnings' Director of Special Services. (McGuire Depo. at 16-17; Affidavit of Sheila Warren, signed and sworn on November 20, 2008 at ¶11)(hereinafter "Warren Affidavit.").

10. The terms of Ms. McGuire's employment with Bright Beginnings are set forth in a contract, which includes her provision of early intervention and preschool education services, attendance at staff meetings, program coordination with other services providers, attending supervision meetings, and attending training sessions. (Exhibit I to Declaration of Laura Wong-Pan dated November 21, 2008).

11. Bright Beginnings is a contractor for Orange County, and provides early intervention services in and preschool services in Orange County. (McGuire Depo. at 13-15). For services provided by Bright Beginnings staff, Orange County will reimburse the agency based on State-approved reimbursement rates, and the agency will compensate its service providers. (McGuire Depo. at 14, 36).

12. McGuire is reimbursed directly by the County of Orange when she is referred a case directly, rather than through Bright Beginnings. (McGuire Depo. at 36). On any given day, Ms. McGuire may be providing early intervention services to children based on her own County contract, or based on Bright Beginnings' County contract.

13. Services providers like Ms. McGuire, or Bright Beginnings, receive referrals for cases from the ongoing service coordinator assigned to a child, or by responding to an internet posting issued by the County. (McGuire Depo. at 30, 33). The ongoing service providers are not County employees, but are agencies providing early intervention services. (10 NYCRR §69-4(a); Warren Affidavit at ¶5.).

15. On various occasions between 2002 and 2004, Sheila Warren had been concerned that Bright Beginnings failed to comply with program requirements. She wrote a memorandum to Bright Beginnings in 2002 summarizing her concerns. (Warren Aff. at ¶13).

16. Bright Beginnings President Al Coley wrote a letter to Ms. Warren dated October 11, 2002. (Warren Aff. Exhibit D). On November 21, 2002, Bright Beginnings submitted updates of its plan of corrections to Sheila Warren. (Warren Aff. Exhibit E).

17. Many of Bright Beginnings bills from the end of 2002 to January of 2003 contained inadequate information. The County billing staff could not determine whether the bills covered reimbursable services, and they repeatedly had to return bills to Bright Beginnings,

unpaid. (Warren Aff. ¶15). Al Coley sent a letter to the County on January 16, 2003, admitting that his attend to hire an independent billing consultant was a "dismal failure." (Warren Aff. Exhibit F). Most of the bills had to be redone and resubmitted for payment, which delayed the reimbursement process.

18. Bright Beginnings failed to comply with a request of a CPSE Chair for a copy of the service provider's progress or "encounter" notes in 2003. (Warren Aff. ¶16). The notes were not produced at the CPSE meeting, as requested. (Warren Aff. ¶16). Instead, Ms. McGuire responded to the request in writing by letter dated April 2, 2003, stating that the notes were only for billing purposes. (Warren Aff. ¶16). The chair responded in writing by letter dated April 2, 2003, asking again for the notes to be produced and stating that the notes are used as a professional documentation of services. (Warren Aff. ¶16).

19. Service providers are required to maintain progress notes to document the services that have been provided to the child. (Warren Aff. ¶16). .

20. Sheila Warren met with Al Coley and Bright Beginnings administrator John Kodra on June 26, 2003 and discussed this, and other issues. (Warren Aff. ¶17). Mr. Coley and Mr. Kodra decided that Donna McGuire would be Bright Beginnings' contact person for all issues regarding delivery of services. (Warren Aff. at ¶17)

21. In April of 2004, a CPSE meeting took place and Bright Beginnings, which provided services for the child, sent a representative to the meeting who had little or no knowledge of the child and the services he was receiving, and the meeting therefore had to be tabled. (Warren Aff. ¶18).

22. On about April 29, 2004, at a CPSE meeting, parents of a child receiving preschool services complained about the inadequacy of the services their child had received from

5

one of the Bright Beginnings providers of special education services. (Warren Aff. ¶19). Ms. Warren called Donna McGuire to talk to her about the problem, and asked that the Bright Beginnings staff work with the special education provider on the issues raised by the parent. (Warren Aff. ¶19).

23. Ms. Warren held a meeting with Bright Beginnings staff on June 29, 2004. (Warren Aff. ¶20). Al Coley, John Kodra, and Donna McGuire attended on behalf of Bright Beginnings. (Warren Aff. ¶20). They discussed the conduct of CPSE meetings and transition issues. (Warren Aff. at ¶20).

24. On September 13, 2004, Al Coley wrote a letter to Ms. Warren reiterating that Dr. Kodra was to be the direct contact for questions and concerns that arise regarding services to children and another certified special education teacher would be available for CPSE meetings if necessary. (Warren Aff. ¶22).

25. During the following week Ms. Warren learned that Donna McGuire had written a letter directly to a CPSE chair outside of a CPSE meeting recommending that a certain child continue receiving preschool services at the day care facility where he received early intervention services. (Warren Aff. at ¶23; Warren Aff. Exhibit J). The letter was sent after several CPSE meetings had already been held. (Warren Aff. at ¶23).

26. In 2003, Ms. Warren had prepared a document entitled Orange County Department of Health Early Intervention Program, Miscellaneous Items, which providers had received, stating the following:

> Providers cannot make recommendations in writing or orally about the type, place, frequency, duration or starting date of preschool special education services. These factors are determined at the CPSE meeting.

(McGuire Depo. at 63; Warren Depo. at 118; Warren Aff. at ¶25).

27. In a memorandum dated September 21, 2004, Ms. Warren directed Bright Beginnings to remove Ms. McGuire from all cases and to not accept new cases "until the contractual implications are reviewed by the County." (Warren Aff. at ¶26). In that memorandum, Ms. Warren notified Bright Beginnings that Ms. McGuire had failed to follow early intervention procedural requirements. She noted that "transition reports were to be sent to the CPSE Chairperson by the [ongoing service coordinator] by February 7 – 14," and that "if the CPSE requests updated intervention in preparation for a CPSE meeting, with parental permission, the current progress notes can be shared with the CPSE committee." (Warren Aff. Exhibit M).

28. Thereafter, Ms. Warren met with Dr. Jean Hudson, the Orange County Commissioner of Health, to discuss problems concerning Dynamic Therapy & Learning and Bright Beginnings. (Hudson Depo. at 24). Ms. Warren told the Commissioner some of the problems she had encountered with Bright Beginnings. (Hudson Depo. at 27; Warren Depo. at 143-144).

29. On September 28, 2004, after discussions with one of the County Attorneys and the County Executive, Commissioner Hudson issued a letter to Bright Beginnings, Dynamic Therapy & Learning, and Donna McGuire stating that their contracts were cancelled, effective October 31, 2004. (Warren Aff. Exhibit O;  Hudson Depo. at 29).

30. On September 28, 2004, an email was issued notifying all agencies involved in early intervention and preschool education services about the contract terminations. (Warren Depo. at 184-188). The e-mail gave no details about why the contracts were terminated, but stated simply: "Please see the attached memo regarding the termination of three provider contracts within Orange County." (Warren Aff. Exhibit N).

31. Ms. McGuire and Ms. Warren did not attend a meeting at the Clarion Hotel on May 7, 2003.

32. Ms. McGuire and Ms. Warren attended a meeting on July 30, 2004. (McGuire Depo. at 101). The meeting was organized by Ms. Warren, and all County contractors who provided ABA services through Orange County's early intervention program were required to attend. (McGuire Depo. at 164-165). The purpose of the meeting was to bring together all providers who offer ABA services in the early intervention program, to review how such services are to be provided, and what outcomes might be sought through ABA. (Warren Depo. at 50).

33. Prior to the meeting, Donna McGuire and other attendees were asked to submitt to Ms. Warren their description of the role of the ABA team leader and others involving in the ABA services, and they described their respective approaches to ABA services. (Warren Aff. Exhibit P).

34. At the meeting, attendees broke into groups to talk about their individual experiences with the ABA methodology. (McGuire Depo. at 102). The group reached a consensus regarding the role of the ABA team leader, and the manner in which ABA services would be provided. (Warren Aff. at ¶34).

35. Donna McGuire was notified that her contract was reinstated, by letter dated October 8, 2004. (Warren Aff. Exhibit S).

36. On October 21, 2004, Bright Beginnings was notified by Commissioner Hudson that Ms. McGuire could continue to receive cases as a Bright Beginnings contractor as soon as Bright Beginnings signs a settlement agreement and returns the agreement to the County. (Warren Aff. at ¶40). Bright Beginnings signed this agreement and sent it back to the County in

October of 2004. (Warren Aff. at ¶40).


Dated:  November 21, 2008
        Goshen, New York

              Respectfully submitted,


              S/
              _____
              Laura Wong-Pan (LW 8530)
              Senior Assistant County Attorney
              David L. Darwin
              Orange County Attorney
              Attorney for Sheila Warren
              255 Main St.
              Goshen, NY 10924
              (845) 291-3150