UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNA McGUIRE,

> Plaintiff,

> -v.-

SHEILA WARREN,
sued in her individual capacity,

> Defendant.

05 Civ. 02632 (DCP)[1] (WCC)

[Granting in part and denying in part Defendant's motion for summary judgment.]

Dated: November 18, 2009

Sussman & Watkins (Michael H. Sussman) for Plaintiff.

David L. Darwin, County Attorney for Orange County (Laura Wong-Pan, Senior Assistant County Attorney) for Defendant.

## OPINION

**POGUE, Judge:** In prior proceedings in this matter, this Court dismissed Plaintiff's claims, brought under 19 U.S.C. § 1983, that Defendant violated her First and Fourteenth Amendment rights in terminating her contract to provide services

---

[1] Judge Donald C. Pogue of the United States Court of International Trade, sitting by designation.

to the County of Orange, State of New York (the "County").

McGuire v. Warren, 404 F. Supp. 2d 530, 533, 540 (S.D.N.Y.

2005).[2]  The Court of Appeals vacated that dismissal.  McGuire v.

Warren, 207 F. App'x 34 (2d Cir. 2006).

The Court of Appeals decision, however, did not revive all

of Plaintiff's claims.  The Court affirmed the dismissal of

Plaintiff's Fourteenth Amendment claim, McGuire, 207 F. App'x at

37, and upheld this Court's conclusion that one of Plaintiff's

statements alleged to be protected by the First Amendment was

not so protected because it did not involve a matter of public

concern.  Id. at 36.  Nonetheless, the Court of Appeals concluded

that this statement "may not be the only speech relevant to

McGuire's claim," id., and held that:

> [I]t is possible to read the allegations in the
> complaint to allege that the adverse employment actions
> allegedly taken by the defendants against McGuire were
> in retaliation for statements she made more broadly
> about the provision of services to special needs
> children as a group, which might well be a matter of
> public interest.

Id.

The Court of Appeals noted that "the complaint as filed did

not include allegations that McGuire was speaking as a citizen

when she engaged in her alleged protected speech," id., and that

_____

[2]  Familiarity with this Court's prior opinion is presumed.
All relevant facts are set forth therein.

the Supreme Court had then recently held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).

Because Garcetti was decided after Plaintiff's original complaint was filed and after the motion for judgment on the pleadings was granted, and because Plaintiff's counsel had indicated that Plaintiff could, if given the opportunity to do so, amend her complaint to include "specific allegations as to specific statements she may have made about a matter of public concern as a private citizen that were a 'motivating factor' for the alleged adverse employment action against her," McGuire, 207 F. App'x at 36-37, the Court of Appeals vacated the district court's judgment and remanded the matter "solely for the purpose of permitting McGuire to make . . . a motion to serve and file an amended complaint . . . in order to attempt to meet the change in applicable law since she filed her complaint." Id. at 37.

Now, in her amended complaint,[3] Plaintiff alleges that Defendant unlawfully acted to effect the termination of

---

[3] Over Defendant's objection, this Court granted Plaintiff's motion to serve and file an amended complaint.

Plaintiff's contract in retaliation for Plaintiff's exercise of her First Amendment rights. (Am. Compl. ¶ 27.)  Specifically, Plaintiff alleges speech at two meetings with Defendant, in which Plaintiff expressed concern that Defendant's conduct failed to conform to relevant State guidelines, (Am. Compl. ¶¶ 8, 17), and that the County's policies were not in accordance with the best interests of special needs children. (Id. at ¶¶ 9, 18.) Plaintiff further alleges that she voiced these comments "as a citizen, concerned that the county for which she provided services, did not conform with state and federal regulation and law and with best practices." (Id. at ¶ 19.)  Finally, Plaintiff alleges that, "in retaliation for these expressed disagreements with her, defendant Warren terminated plaintiff's contract as an independent service provider." (Id. at ¶ 22.)

Defendant denies violating Plaintiff's rights and moves for summary judgment. (Am. Answer ¶ 6; Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").)  For the reasons expressed below, Defendant's motion is granted in part and denied in part.

## UNCONTESTED FACTS

Based on the parties' respective Rule 56.1 statements, the following relevant facts are uncontested.

Defendant is and was during all relevant times Orange County's Director of Intervention Services and the Early Intervention Official, overseeing in that capacity the administration within Orange County of New York's early intervention program, which provides special services to eligible children under the age of three. (<u>See</u> Def.'s Loc. R. Civ. P. 56.1(a) Statement ("Def.'s Stmnt.") ¶¶ 2-4; Pl.'s Reply to Def.'s Loc. R. Civ. P. 56.1(a) Statement ("Pl.'s Stmnt.") ¶¶ 2-4.) Plaintiff is an independent contractor who worked for the County of Orange both directly and as director and provider of special education services at Bright Beginnings Family Services ("Bright Beginnings"), prior to the termination of both contracts in September 2004. (Def.'s Stmnt. ¶¶ 1, 29-30; Pl.'s Stmnt. ¶ 1.) Bright Beginnings contracts with Orange County to provide early intervention services, and is reimbursed by the County for services provided by its staff. (Def.'s Stmnt. ¶ 11; Pl.'s Stmnt. ¶ 11.)

Plaintiff was named the Director of Special Services at Bright Beginnings on or about October 24, 2002. (Def.'s Stmnt. ¶ 9; Pl.'s Stmnt. ¶ 9.) Her responsibilities, as explicitly provided for in her contract with Bright Beginnings, were to "[p]rovide service in accordance with Early Intervention/CPSE [Committee on Preschool Special Education] authorization and

5

regulations," to "[m]aintain and submit a daily log of services

provided," and "[t]o assume personal responsibility (unpaid

hours) for . . . [*inter alia*] [p]articipation in supervision

sessions[,] . . . [c]oordination of [the] program with other

service providers[,] . . . [and] Annual Staff Meetings." (Decl.

of Laura Wong-Pan in Supp. of Mot. for Summ. J. [Dkt. No. 30]

("Wong-Pan Decl.") Ex. I at 4; see Def.'s Stmnt. ¶ 10; Pl.'s

Stmnt. ¶ 10.⁴)  On June 26, 2003, Defendant met with the

President and the administrator of Bright Beginnings and was

informed by them that Plaintiff would be Bright Beginnings'

contact person for all issues regarding delivery of services.

(Def.'s Stmnt. ¶ 20; see Pl.'s Stmnt. ¶ 20.⁵)

     Two other meetings involving the parties are at issue here.

First, on January 21, 2004, Defendant and Plaintiff attended a

---

     ⁴ Although the parties dispute the exact nature and extent
of Plaintiff's professional responsibilities, (see Def.'s Stmnt.
¶ 10; Pl.'s Stmnt. ¶ 10), both parties point to the contract
between Plaintiff and Bright Beginnings for evidence in this
regard. (Id.)  Accordingly, it is uncontroverted that, at the
very least, the language in that contract describes those of
Plaintiff's responsibilities upon which the parties are in
agreement.

     ⁵ While Plaintiff denies Defendant's characterization of the
nature of this meeting, she does not deny that Defendant received
this information or that she was in fact designated as the
contact person regarding service delivery. (See Pl.'s Stmnt. ¶
20; see also id. at ¶ 22 ("Coley [the President of Bright
Beginnings] had designated McGuire to coordinate service delivery
for Bright Beginnings in Orange County.").)

meeting at the Clarion Hotel. (Pl.'s Counter Statement of Material Disputed Facts ("Pl.'s Counter Stmnt.") ¶ 6; Def.'s Mem. 17 ("[Defendant] does have information that a meeting took place on January 21, 2004 at the Clarion Hotel . . . ." (citing Aff. of Michael H. Sussman in Opp'n to Mot. for Summ. J. ("Sussman Aff.") Ex. 1 (Warren Dep.) at 81)).) This was the first of the two meetings at which Plaintiff alleges she voiced protected speech, in retaliation for which Defendant allegedly caused the termination of Plaintiff's contract with the County. (See Am. Compl. ¶¶ 12-18; Pl.'s Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") 5 & n.1.)

Second, on July 30, 2004, Plaintiff attended a meeting organized by Defendant for applied behavior analysis ("ABA") service providers to "review the definitions of [Early Intervention] program components." (Aff. of Donna McGuire in Opp'n to Mot. for Summ. J. ("McGuire Aff.") Ex. 3; see Def.'s Stmnt. ¶ 32; Pl.'s Stmnt. ¶ 32.) Plaintiff alleges that at this meeting she again voiced protected speech leading to Defendant's allegedly retaliatory effort to terminate her contract. (Am. Compl. ¶¶ 8-11.)

The parties are also in agreement on some of the facts related to the termination of Plaintiff's contract. Specifically, on September 13, 2004, the President of Bright

Beginnings wrote a letter to Defendant, confirming that Plaintiff was no longer the contact person for issues regarding delivery of services. (See Def.'s Stmnt. ¶ 24; Pl.'s Stmnt. ¶ 24.)  Then, in a memorandum dated September 21, 2004, Defendant directed Bright Beginnings to remove Plaintiff from all cases and not to accept new cases. (Def.'s Stmnt. ¶ 27; Pl.'s Stmnt. ¶ 27.)  Thereafter, Defendant met with the Orange County Commissioner of Health, who subsequently terminated the contracts of Plaintiff and Bright Beginnings, as well as that of one other institutional service provider. (Def.'s Stmnt. ¶¶ 28-29; Pl.'s Stmnt. ¶¶ 28-29.)

At her deposition in this case, Commissioner Hudson, the County official with responsibility to terminate Plaintiff's contract, testified that Plaintiff's individual contract with the County was terminated "only because Ms. McGuire, as [Commissioner Hudson] understood it, was a director of Bright Beginnings[,] [and if the County was] going to terminate the . . . Bright Beginnings contract, it didn't make sense to have an [individual] contract with one of the directors." (Sussman Aff. Ex. 2 (Hudson Dep.) at 24.)  Commissioner Hudson further testified that she had learned of Plaintiff's status as Director at Bright Beginnings from Defendant, and that Defendant did not at any time present the Commissioner with any complaints regarding Plaintiff's

exercise of obligations under her personal contract with the
County. (<u>Id.</u> at 25.)

DISCUSSION

I.     <u>Legal Standard for Summary Judgment</u>

To re-state the familiar standard, the court must grant a
motion for summary judgment if the case presents no genuine issue
as to any material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c).  In deciding
the presence of a genuine issue of material fact, the court must
"resolve all ambiguities and draw all reasonable inferences in
the light most favorable to the party opposing the motion,"
<u>Cifarelli v. Vill. of Babylon</u>, 93 F.3d 47, 51 (2d Cir.
1996)(citation omitted), and the moving party bears the burden of
establishing the absence of any genuine issue as to any material
fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986);
<u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).

To satisfy its burden, the moving party must show that no
reasonable jury could find in favor of the non-moving party on
the evidence available. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>Holtz
v. Rockefeller & Co.</u>, 258 F.3d 62, 69 (2d Cir. 2001).  In doing
so, "the moving party must first make a *prima facie* case by
either identifying the portions of the record which it believes

demonstrate the absence of a genuine issue of material fact or pointing out that there is an absence of evidence to support the nonmoving party's case." <u>Golden Pac. Bancorp. v. FDIC</u>, 375 F.3d 196, 200 (2d Cir. 2004)(quotation and alteration marks and citation omitted).   The non-moving party must then "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see also</u> <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000).   "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998).

## II.   Plaintiff's Claim Pursuant to 42 U.S.C. § 1983[6]

### A.   Elements of a Claim of Retaliation in Violation of the First Amendment

To establish a prima facie claim of retaliation in violation of the First Amendment, Plaintiff must provide sufficient evidence to show that:

---

[6] The parties do not dispute that Defendant was acting under color of state law when she engaged in conduct now challenged by the Plaintiff and that such conduct is generally within the scope of the protections of Section 1983. (<u>See generally</u> Pl.'s Stmt.; Def.'s Stmnt.)

(1)  the speech at issue was made as a citizen on
     matters of public concern rather than as an
     employee on matters of personal interest,

(2)  he or she suffered an adverse employment action,
     and

(3)  the speech was at least a substantial or
     motivating factor in the adverse employment
     action.

Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir.

2006) (internal citations, quotation and alteration marks

omitted).  See also Mount Healthy City Sch. Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 283-87 (1977).  "If a plaintiff makes a

sufficient showing of each of these elements, summary judgment is

not appropriate unless the defendant establishes as a matter of

law that he would have taken the same adverse employment action

even absent the protected conduct." Dillon v. Morano, 497 F.3d

247, 251 (2d Cir. 2007)(citation omitted).

     In this case, Plaintiff worked as an independent contractor

for a government entity.  As the Supreme Court reiterated in

Garcetti, the court must use "two inquiries to guide

interpretation of the constitutional protections accorded to

public employee speech":

     The first requires determining whether the employee
     spoke as a citizen on a matter of public concern.  If
     the answer is no, the employee has no First Amendment
     cause of action based on his or her employer's reaction
     to the speech.  If the answer is yes, then the
     possibility of a First Amendment claim arises.  The
     question becomes whether the relevant government entity

had an adequate justification for treating the employee
differently from any other member of the general
public.

Garcetti, 547 U.S. at 418 (citing Pickering v. Bd. of Educ. of

Twp. High Sch. Dist. 205, Will County, 391 U.S. 563, 568 (1968);

Connick v. Myers, 461 U.S. 138, 147 (1983)). See also Ruotolo v.

City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting

Garcetti, 547 U.S. at 418); Bd. of County Comm'rs, Wabaunsee

County, Kan. v. Umbehr, 518 U.S. 668, 673 (1996) (extending to

independent contractors the same First Amendment protections as

those afforded to public employees).

### B.    Whether Plaintiff Spoke as a Citizen

It follows that the first question before the court is

whether Defendant has met her burden to demonstrate that no

reasonable jury could find that Plaintiff was speaking as a

citizen and not pursuant to her official duties in the speech

which Plaintiff alleges led to the retaliatory termination of her

contract. See Garcetti, 547 U.S. at 421; Anderson, 477 U.S. at

249.

### 1.    The July 30, 2004 Meeting

The parties agree that on July 30, 2004, Plaintiff attended

a meeting organized by Defendant for ABA providers to discuss

certain aspects of the provision of services under the Early

Intervention program. (Def.'s Stmnt. ¶ 32; see Pl.'s Stmnt. ¶ 32; see also McGuire Aff. Ex. 3 (invitation from Defendant to "ABA Providers in EI," regarding "ABA services").)  Plaintiff alleges that at this meeting, Plaintiff "voiced her general concern that the hours of service provided by [Defendant's] office to autistic children did not follow the guidelines provided by New York State and were truly inadequate for these children," (Am. Compl. ¶ 8), and that "Plaintiff also stated that many autistic children learn best when provided a mainstream pre-school classroom and ABA services both in those rooms and at home, contrary to the practices defendant favored." (Id. at ¶ 9.)  Plaintiff also alleges that, following Plaintiff's remarks at this meeting, Defendant voiced her disagreement with Plaintiff and ended the meeting by stating to those in attendance, "Remember who you work for." (Id. at ¶ 11.)

Defendant argues that Plaintiff's alleged speech at this meeting falls, in any case, outside the scope of protection offered by the First Amendment, because Plaintiff was speaking pursuant to her official duties as a County contractor. (Def.'s Mem. 20.)  Because "[t]he meeting was not a public forum," Defendant argues, "but was an employment-related forum at which service providers discussed with their employer (Orange County) how best to implement state rules and regulations, and discussed

County policies governing the provision of services in early

intervention and preschool education," (id.), Plaintiff's speech,

as that of an attending service provider, was made in the course

of her official duties. (Id.)

It is uncontested that the July 30, 2004 meeting was

convened by Defendant "for all Early Intervention ABA providers,

to review the definitions of program components." (McGuire Aff.

Ex. 3.[7])   It is further uncontested that Plaintiff was an Early

Intervention ABA provider, working under contract with Orange

County both in her individual capacity and through her contract

with Bright Beginnings. (Def.'s Stmnt. ¶ 1; Pl.'s Stmnt. ¶ 1; see

also Wong-Pan Decl. Ex. I (Plaintiff's contract with Bright

Beginnings); Decl. of Laura M. Wong-Pan in Supp. of Def.'s Mot.

to Dismiss [Dkt. No. 9] Ex. A (Plaintiff's contract with the

County).)   Although Plaintiff maintains that she "volunteered to

attend this meeting and was not required to attend by anyone,

either from the County or from Bright Beginnings," (Pl.'s Counter

Stmnt. ¶ 15), and that she attended the meeting "because it was

---

[7] Although Plaintiff contests Defendant's assertion that
"all County contractors who provided ABA services through Orange
County's early intervention program were required to attend"
(Def.'s Stmnt. ¶ 32; Pl.'s Stmnt. ¶ 32), Plaintiff herself cites
to Defendant's invitation to the meeting, dated June 2, 2004.
(Pl.'s Stmnt. ¶ 32; see McGuire Aff. Ex. 3.)   Accordingly, the
actual language of this invitation, as quoted above, is
uncontested.

[her] passion that these kids get twenty to forty hours [of ABA services]," (id. at  26), it is clear from the record that Plaintiff was invited to the meeting in her capacity as an ABA service provider under contract with the County.

Defendant's invitation to this meeting is unequivocally addressed exclusively to "all Early Intervention ABA providers" (McGuire Aff. Ex. 3), with an explicit goal "to review the definitions of program components . . . [and] to have standardization of all components . . . ." (Id.)  Regardless of Plaintiff's observation that the invitation limited attendance to three persons per agency, and that Plaintiff was the only person from Bright Beginnings to attend, (Pl.'s Stmnt. ¶ 32), the fact remains that Plaintiff was invited and permitted to attend this meeting, if at all, as a County contractor and not as a concerned member of the public. See, e.g., Milde v. Hous. Auth. of the Town of Greenwhich, No. 3:00CV2423(AVC), 2006 WL 2583086, at *6 (D. Conn., Sept. 5, 2006) (employee's speech held to have been voiced pursuant to official duties because "unlike the general[] citizenry, she spoke before the Board in its executive session, which was not open to the public").

With respect to determining the scope of an employee's official responsibility, "[t]he proper inquiry is a practical one." Garcetti, 547 U.S. at 424.  "Formal job descriptions," for

15

example, "often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 424-25.  Accordingly, it is not dispositive that neither Plaintiff's direct contract with the County nor her contract with Bright Beginnings explicitly list a duty on Plaintiff's part to attend meetings held by the County to discuss its program requirements in an effort to achieve standardized implementation of its components.  Nonetheless, it is instructive that in her contract with Bright Beginnings, Plaintiff agreed to "[p]rovide service in accordance with Early Intervention/CPSE authorization" and "[t]o assume personal responsibility (unpaid hours) for . . . [inter alia] [c]oordination of [the] program with other service providers." (Wong-Pan Decl. Ex. I.)

Defendant, as Orange County's Director of Intervention Services and Early Intervention Official, convened the July 30th meeting precisely as a means of ensuring the program's coordination among its service providers. (McGuire Aff. Ex. 3.) Defendant's announcement of this meeting explicitly requested that service providers produce their "definition[s] of [program] components and method[s] for frequency and duration of services

16

so these can be used as a common discussion point." (<u>Id.</u>)   The
speech that Plaintiff alleges she subsequently voiced at the
meeting - that 20 to 40 hours should be provided and that
mainstream pre-school classrooms should be used (Am. Compl. ¶¶ 8-
9; Pl.'s Counter Stmnt. ¶¶ 18,22) - falls exactly within the
subject matter that she (among others) was called, as a
contracted ABA service provider, to discuss.

Although Plaintiff has explicitly alleged that she made her
comments at this meeting as a concerned citizen, rather than
pursuant to her duties as a County contractor, "conclusory
allegations will not suffice to create a genuine issue [of
material fact]," <u>Repp v. Webber</u>, 132 F.3d 882, 889 (2d Cir. 1997)
(quoting <u>Del. & Hudson Ry. v. Consol. Rail Corp.</u>, 902 F.2d 174,
178 (2d Cir. 1990)), and the evidence on the record before us
does not support her conclusion. <u>Accord</u> <u>Thompson v. Dist. of</u>
<u>Columbia</u>, 530 F.3d 914, 916 (D.C. Cir. 2008) ("Ordinarily,
employees who make recommendations to their supervisors on
subjects directly related to their jobs are carrying out their
official duties and thus receive no First Amendment
protection.").

Accordingly, the court finds that no genuine issue exists
with respect to the material fact that Plaintiff was speaking
pursuant to her official duties at the July 30, 2004 meeting.  As

a result, Plaintiff's alleged speech at this meeting falls

outside the purview of the protection afforded by the First

Amendment, and thus her claim in this regard must fail. See

Garcetti, 547 U.S. at 421.

    2.    *The January 21, 2004 Meeting*

The parties agree that on January 21, 2004, both Plaintiff

and Defendant attended a meeting at the Clarion Hotel. (Pl.'s

Counter Stmnt. ¶ 6; Def.'s Mem. 17.)  Plaintiff alleges that

"[a]s an attendee interested and knowledgeable about these

issues, plaintiff raised several questions and concerns during

this meeting." (Am. Compl. ¶ 16.[8])  Specifically, Plaintiff

alleges that she openly disagreed with Defendant, and that she

voiced her concern about the compatibility of Defendant's ideas

with relevant State guidelines, as well as her belief that

policies adopted by the County did not promote the best interests

---

    [8] Although Plaintiff's Amended Complaint alleges that this
meeting took place on May 7, 2003, (Am. Compl. ¶ 12), Plaintiff
has explained that the "date of this meeting was misidentified in
the Complaint," and that "at her deposition, plaintiff made clear
that she is not sure of the date of the meeting and the content
of the meeting squared with what defendant Warren agreed happened
at the only Clarion Hotel meeting, which occurred in January
2004." (Pl.'s Mem. 5 n.1.)  In her Rule 56.1 Counter Statement,
Plaintiff alleges this meeting to have occurred on January 21,
2004. (Pl.'s Counter Stmnt. ¶ 6 (citing Sussman Aff. Ex. 1
(Warren Dep.) at 81).)  Thus, despite the Amended Complaint's
reference to a meeting at the Clarion Hotel in May 2003, the
parties are now in agreement that a meeting did take place at the
Clarion Hotel on January 21, 2004.

of special needs children. (Am. Compl. ¶¶ 17-18; Pl.'s Counter
Stmnt. ¶¶ 6-9.)

In support of her allegations, Plaintiff directs the court
to Exhibit 1 of the Sussman Affirmation, which reproduces
portions of Defendant's deposition in this case. (Pl.'s Counter
Stmnt. ¶ 6.)  In her deposition, Defendant testified that she
attended a meeting at the Clarion Hotel on January 21, 2004,
(Sussman Aff. Ex. 1 (Warren Dep.) at 81); that the meeting was
called at the request of the President of Bright Beginnings (id.
at 82); that the meeting's purpose was for Defendant to "meet
with the providers to go over some of the issues relative to
being Early Intervention providers" (id.); and that Defendant
recalled Plaintiff raising questions about Defendant's comments
at that meeting. (Id. at 86.)  Defendant has not produced any
further evidence with respect to this meeting.

Unlike the speech voiced by Plaintiff at the July 30, 2004
meeting, discussed above, the evidence on the record with respect
to speech allegedly voiced by Plaintiff at the January 21, 2004
meeting does not unequivocally support a finding that Plaintiff
was speaking pursuant to her official duties.  Unlike the July 30
meeting, this meeting was not called by Defendant, as
representative of the County as Plaintiff's employer, but was
initiated at the behest of Bright Beginnings' President. (Sussman

Aff. Ex. 1 (Warren Dep.) at 82.)   Further, the meeting was held
neither at the County offices nor at the offices of Bright
Beginnings, but at the Clarion Hotel, at least permitting the
inference that this meeting fell outside the bounds of either
agency's regular course of official business.

Finally, Defendant's testimony that she agreed to meet with
the providers "to go over some of the issues relative to being
Early Intervention providers" (id.) could support a reasonable
conclusion that, in Plaintiff's words, the providers sought the
meeting "as [] citizen[s], concerned that the county for which
[they] provided services[] did not conform with state and federal
regulation and law and with best practices." (Am. Compl. ¶ 19.)
In any case, Defendant has not presented sufficient evidence to
prove that there exists no genuine issue of fact in this regard,
and has accordingly failed to meet her burden for summary
judgment on this portion of Plaintiff's claim. See Price v. N.Y.
State Bd. of Elections, 540 F.3d 101, 107 (2d Cir. 2008)("The
burden is on the moving party to establish that there are no
genuine issues of material fact in dispute . . . .").

Because Defendant has met her burden with respect to that
portion of Plaintiff's claim that is grounded in alleged speech
at the July 30 meeting but not with respect to the speech
allegedly voiced at the January 21 meeting, the court will

20

proceed to analyze the remaining elements of Plaintiff's claim
with respect to the latter meeting only. See Salahuddin v. Goord,
467 F.3d 263, 281 (2d Cir. 2006)("[W]here there is an absence of
sufficient proof as to one essential element of a claim, any
factual disputes with respect to other elements of the claim are
immaterial and cannot defeat a motion for summary
judgment.")(citation omitted).

**C.  Whether Plaintiff's Speech Was a Matter of Public
Concern**

"Whether an employee's speech addresses a matter of public
concern is a question of law for the court to decide, taking into
account the content, form, and context of a given statement as
revealed by the whole record." Ruotolo v. City of New York,
514 F.3d 184, 189 (2d Cir. 2008) (quoting Lewis v. Cowen, 165
F.3d 154, 163 (2d Cir. 1999)).  The court must determine whether
Plaintiff's speech encompasses a "subject of legitimate news
interest; that is, a subject of general interest and of value and
concern to the public at the time of publication." City of San
Diego v. Roe, 543 U.S. 77, 84 (2004).  "The heart of the matter
is whether the employee's speech was calculated to redress
personal grievances or whether it had a broader public purpose."
Ruotolo, 514 F.3d at 189 (internal quotation marks omitted)
(quoting Lewis, 165 F.3d at 163-64); N.Y. State Law Officers
Union v. Andreucci, 433 F3d 320, 330 (2d Cir. 2006).  In

extrapolating on the nature of this distinction, the Second

Circuit compared cases like <u>Ezekwo v. N.Y. City Health & Hosps.</u>

<u>Corp.</u>, 940 F.2d 775 (2d Cir. 1991), where the relevant speech

consisted of complaints regarding an employee's personal

experience in the workplace (including unfair evaluations, lack

of certain opportunities, and racial discrimination), with cases

like <u>Cotarelo v. Vill. of Sleepy Hollow Police Dep't</u>, 460 F.3d

247 (2d Cir. 2006), where the employee's allegations concerned

"discrimination problems generally and were not limited to

instances affecting only [the complaining employee]." <u>Ruotolo</u>,

514 F.3d at 190.

In the present case, Plaintiff's alleged speech does not

appear to be so clearly a matter of personal concern that it

fails to implicate the public interest.  On the contrary,

Plaintiff alleges that she expressed her belief that the County's

Early Intervention Official was not following relevant State

guidelines and was not acting in the best interest of special

needs children. (Am. Compl. ¶¶ 17-18.)  Allegations that a

government entity is acting contrary to the guidelines

promulgated to instruct its conduct are clearly a matter of

public concern. <u>See, e.g.</u>, <u>Harman v. City of New York</u>, 140 F.3d

111, 118 (2d Cir. 1998) ("[D]iscussion regarding current

government policies and activities is perhaps the paradigmatic

matter of public concern.") (internal citation, quotation and alteration marks omitted).

In the words of the Supreme Court and the Court of Appeals, "[a]s a general rule, speech on 'any matter of political, social, or other concern to the community' is protected by the First Amendment." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (quoting Connick, 461 U.S. at 146).  The court therefore concludes that Plaintiff has alleged sufficient facts with respect to this element of her claim to survive Defendant's motion for summary judgment.

### D.    Whether Plaintiff's Interest Passes the *Pickering* Balancing Test

Where an employee speaks as a citizen upon matters of public concern, that employee is nevertheless entitled to First Amendment protection only if the circumstances survive a balancing test expounded by the Court in Pickering. Pickering, 391 U.S. at 568.  The Pickering balancing test requires a court to balance the interests of the employee "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id.; see also Connick, 461 U.S. at 142; Garcetti, 547 U.S. at 445 (Breyer, J., dissenting).  In the words of the Second Circuit, the specific inquiry is whether "the employee's interest in free speech is outweighed by the

employer's interest in avoiding disruption." <u>Reuland v. Hynes</u>, 460 F.3d 409, 415 (2d Cir. 2006)(citation omitted).  In this respect, the employer bears the "burden to show that the employee's activity is disruptive to the internal operations of the governmental unit in question." <u>Melzer v. Bd. of Educ. of City Sch. Dist. of N.Y.</u>, 336 F.3d 185, 197 (2d Cir. 2003).

The Second Circuit has explained that, "[a]s a general rule, the application of the [<u>Pickering</u>] balancing test is a question of law which is properly performed by the district court." <u>Gorman-Bakos v. Cornell Coop. Extension of Schenectady County</u>, 252 F.3d 545, 557 (2d Cir. 2001)(citing <u>Lewis</u>, 165 F.3d at 164). However, where facts relevant to the balancing determination, such as those surrounding the actual motivation for the adverse employment action, are contested, "[i]t would be improper . . . for the district court . . . to resolve the factual disputes between the parties, or to decide the proper balance between the parties' interests." <u>Id.</u> at 558.

In this case, because the court concludes, as explained below, that a genuine dispute exists with respect to the factual circumstances surrounding Defendant's role in and motivation for effecting the termination of Plaintiff's contract with the County, a discussion of whether Plaintiff's interest in freedom of speech outweighs Defendant's interest in avoiding the

potential disruption of such speech would be premature. See *id.*
at 557-58 ("[T]he parties dispute the extent to which
[Plaintiff]'s communications . . . were the basis for
[Plaintiff]'s dismissal.  These underlying factual disputes go to
the fundamental issue of the true motivation behind [Plaintiff's]
dismissal.  . . .  Accordingly, *after these underlying factual
disputes are decided by a factfinder*, the [] court [will]
consider the factual findings to come to its own legal
conclusions about whether the employer's interest in efficiency
or the employee's interest in free speech is
paramount.")(emphasis added)(citations omitted). See also Johnson
v. Ganim, 342 F.3d 105, 115 (2d Cir. 2003)("[F]actual disputes
pertaining to . . . defendants' motivations in suspending and
terminating plaintiff preclude summary judgment.").

   E.   **Causation**

   The final element of Plaintiff's *prima facie* claim of
retaliation in violation of the First Amendment is that "the
speech was at least a substantial or motivating factor in the
adverse employment action." Zelnik, 464 F.3d at 225 (citation,
quotation and alteration omitted).  "Adverse employment actions
include discharge, refusal to hire, refusal to promote, demotion,
reduction in pay, and reprimand." Morris, 196 F.3d at 110
(citation omitted).  Here, Plaintiff's employment contract was

25

terminated. (Def.'s Stmnt. ¶¶ 28-29; Pl.'s Stmnt. ¶¶ 28-29.)
"Termination [] obviously qualifies as an adverse employment
action." <u>Morris</u>, 196 F.3d at 111.

To establish a claim for retaliation in violation of
Plaintiff's First Amendment rights, the causal connection between
the protected speech and the adverse employment action "must be
sufficient to warrant the inference that the protected speech was
a substantial motivating factor in the adverse employment action,
that is to say, the adverse employment action would not have been
taken absent the employee's protected speech." <u>Id.</u> at 110 (citing
<u>Doyle</u>, 429 U.S. at 287).  "Causation can be established either
indirectly by means of circumstantial evidence, for example, by
showing that the protected activity was followed by adverse
treatment in employment, or directly by evidence of retaliatory
animus." <u>Id.</u> (citing <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203,
209 (2d Cir. 1990)).

### 1.  *Direct Evidence of Retaliatory Animus*

In support of her motion for summary judgment, Defendant
argues that the record presents no direct evidence of retaliatory
animus in response to Plaintiff's protected speech. (Def.'s Mem.
22-23.)  Defendant points out that "Ms. McGuire testified that
Ms. Warren did not yell or raise her voice at Ms. McGuire at the
[relevant] meeting[]," (<u>id.</u> at 22 (citation omitted)); that

26

"[t]here is no evidence that Ms. Warren was insulted or angered by the comments, or that she even had any negative reaction whatsoever," (id.); that Defendant's communications to Commissioner Hudson did not mention Plaintiff's comments at the relevant meeting, (id. at 22-23 (citing Sussman Aff. Ex. 2 (Hudson Dep.) at 24); and that "[n]either the memorandum from Ms. Warren dated September 21, 2004, nor the termination letter from Commissioner Hudson dated September 28, 2004, refer to any comments or statements made by Ms. McGuire at [the relevant] meeting[]." (Id. at 23 (citing Sussman Aff. Ex. 2 (Hudson Dep.) at 24).)

Plaintiff presents no evidence or counter-arguments to contradict Defendant's assertions regarding the lack of direct record evidence to support a finding of retaliatory animus with respect to speech voiced by Plaintiff at the January 21, 2004 meeting.[9] (See generally Pl.'s Mem.; Pl.'s Stmnt.; Pl.'s Counter

---

[9] The court notes that, in her Rule 56.1 Counter Statement, Plaintiff claims a number of instances where Defendant allegedly "yelled" and "screamed" at Plaintiff in response to Plaintiff's voicing her opinion that certain specific children should receive more hours of ABA services. (See Pl.'s Counter-Stmnt. ¶¶ 1-4.)
    These allegations suffer from three deficiencies. First, as Defendant correctly points out, the citations provided by Plaintiff in support of paragraphs 3 and 4 of her Rule 56.1 Counter Statement do not contain evidence of the facts alleged in those paragraphs. (See Def.'s Reply Mem. of Law in Further Supp. of her Mot. for Summ. J. ("Def.'s Reply") 12-13 (citing Gallimore-Wright v. Long Island R.R., 354 F. Supp. 2d 478, 482 (S.D.N.Y. 2005)("[A] proper Rule 56.1 statement submitted by a

Stmnt.)  The court therefore concludes that the case presents no
genuine issue of material fact with regard to direct evidence of
retaliatory intent and moves on to consider the issue of
circumstantial evidence of such motive.

---

non-movant . . . must cite admissible evidence in support of the
non-movant's contention that there is admissible evidence
creating a genuine issue for trial." (quotation marks and
citation omitted)); compare Pl.'s Counter-Stmnt. ¶¶ 3-4 with
McGuire Aff. ¶¶ 14-15.)  Second, even if Plaintiff did direct the
court to admissible evidence in support of the facts alleged in
paragraphs 3 and 4 of her Counter Statement, the evidence of
retaliatory animus alleged therein refers in any case to
Defendant's responses to speech voiced by Plaintiff in connection
with cases of particular children – that is, pursuant to her
official duties as an ABA service provider. Speech regarding
"whe[ther] one student should receive his preschool services and
whether he was progressing at his present level of services" is
not speech on a matter of public concern. McGuire, 404 F. Supp.
2d at 537, aff'd McGuire, 207 F. App'x at 36 ("We agree with the
district court that the August 2004 letter . . . did not address
a matter of public concern.  It focused, instead, on an internal
administrative matter that was not in and of itself of interest
to the community at large.").
      Finally, with respect to the allegations contained in
paragraphs 1 and 2 of Plaintiff's Counter Statement, Plaintiff
refers to Defendant's reaction to Plaintiff's speech at "an IFSP
[Individualized Family Services Plan] meeting concerning SB at
the family home." (Pl.'s Counter Stmnt. ¶ 1.)  Speech with
respect to a particular child's needs is, again, not speech on a
matter of public concern. McGuire, 404 F. Supp. 2d at 537, aff'd
McGuire, 207 F. App'x at 36.  Further, Individualized Family
Services Plan meetings are an integral part of New York's Early
Intervention Program, and are required to be convened by the
Early Intervention Official (in Orange County, this position is
occupied by Defendant).  New York Public Health Law § 2545.
Plaintiff's speech regarding the needs of particular children at
such IFSP meetings therefore clearly falls within the scope of
her official duties as an early intervention service provider.
      Given these circumstances, the court concludes that
allegations of retaliatory animus found in Plaintiff's Counter
Statement, paragraphs 1-4, do not suffice as direct evidence of
retaliatory motive in response to relevant *protected* speech.

## 2. *Circumstantial Evidence of Retaliatory Animus*

"Proof of a causal connection between protected activity and adverse consequence must [often] of necessity be indirect for the simple reason that alleged retaliators can hardly be expected to confess to punishing plaintiffs for protected acts." <u>Grant v. Bethlehem Steel Corp.</u>, No. 76 Civ. 847, 1977 WL 66, at *7 (S.D.N.Y. Dec. 23, 1977), <u>aff'd</u> 622 F.2d 43 (2d Cir. 1980).

Defendant argues that there is no circumstantial evidence of a causal connection between Plaintiff's alleged protected speech and the termination of her contract. (Def.'s Mem. 23-24.) Defendant points out that Plaintiff admits that she has for many engaged in speech similar to that which that she contends caused her contract to be terminated (<u>id.</u> 23 (citation omitted)), and that, "[t]hrough this time, [Plaintiff]'s contracts were renewed annually." (<u>Id.</u>) Defendant argues that "[h]ad the statements been a reason for the contract to be terminated, Ms. Warren could have suggested to Commissioner Hudson that she refuse to renew the contracts each time they expired." (<u>Id.</u>) Instead, Defendant asserts that Plaintiff's contract was terminated in response to a number of incidents where Bright Beginnings and Plaintiff "diverged from County policy and procedure," culminating in the August 2004 letter which immediately preceded the termination, (<u>id.</u> 23-24), and that the fact that other contracts were

terminated at the same time as Plaintiff's contradict any inference of retaliatory animus. (Id. 24.)

In response, Plaintiff argues that the temporal proximity of the protected speech alleged in her amended complaint and Defendant's allegedly retaliatory act permits the requisite causal inference. (See Pl.'s Mem. 15-16.)[10]   Moreover, Plaintiff asserts that Defendant's "shifting explanations for plaintiff's termination" (id. 16) provide further circumstantial evidence of a retaliatory motive.   Plaintiff notes that while Defendant testified in her deposition that she had spoken to Commissioner Hudson prior to Plaintiff's termination in connection with Plaintiff's alleged misconduct, Commissioner Hudson testified that she was not informed of any misconduct on Plaintiff's part and that Plaintiff had in fact been terminated solely because of her capacity as Director of Bright Beginnings, a fact that the Commissioner was informed of by Defendant at a time when Defendant knew it to be no longer true. (Id. 16-17; see Sussman Aff. Ex. 1 (Warren Dep.) at 143-44; id. at Ex. 2 (Hudson Dep.) at 24-25; id. at Ex. 6 (Letter dated Sept. 13, 2004 from Bright

---

[10] While Plaintiff presents the temporal proximity argument only with respect to the July 30, 2004 meeting, (Pl.'s Mem. 15-16), because the court finds that speech voiced at this meeting was not protected by the First Amendment, see supra, the court considers Plaintiff's arguments in so far as they apply to the January 21, 2004 meeting only.

Beginnings President to Defendant, explaining that "[i]n follow up to [a] June 2004 meeting" at which Defendant was in attendance, a person other than Ms. McGuire would from then forward be Bright Beginnings' direct contact person for questions regarding services to children).)

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009)(citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)(per curiam); Gorman-Bakos, 252 F.3d at 554). A period of eight months elapsed between the January 21, 2004 meeting and Plaintiff's termination in September 2004.

The Court of Appeals "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos, 252 F.3d at 554 (collecting cases).  Nevertheless, many district courts in this Circuit, relying on Breeden, 532 U.S. at 273-74 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'")(citing

31

decisions that hold three and four month intervening periods to be too attenuated to support inference of causality), have declined to infer a causal relationship when more than two months had lapsed between the instance of protected activity and the allegedly retaliatory act. See, e.g., Garrett v. Garden City Hotel, Inc., No. 05-CV-0962 (JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007)(collecting cases).

The court notes, however, that these district court decisions, as well as Breeden itself, involved situations where temporal proximity was the *only* evidence offered to support an inference of causality. See id. ("Under the circumstances of this case, such a time lapse, *in the absence of other evidence of defendant's retaliatory motive*, precludes a finding of a causal connection between the protected activity and the adverse employment action.")(emphasis added); Breeden, 532 U.S. at 273 ("[T]here is no indication that [Defendant] even knew about the [protected speech] when she proposed transferring [Plaintiff]."); see also Morris, 196 F.3d at 113 ("No showing was made that defendants were even aware of [Plaintiff's protected activity].").

Unlike Breeden or the cases cited in Garrett, temporal proximity is not the only evidence Plaintiff offers to support an inference of causal nexus between her protected speech and her

subsequent termination.  As noted above, Plaintiff also argues
that discrepancies in the testimonies of Defendant and
Commissioner Hudson could lead a reasonable jury to conclude that
Defendant's explanations of her non-retaliatory motive for
recommending Plaintiff's termination are not credible. (Pl.'s
Mem. 17-18.)  In support of her argument, Plaintiff directs the
court to compare Defendant's deposition with that of Commissioner
Hudson. (Pl.'s Counter Stmnt. ¶¶ 32-49.)

The court notes in this regard that while Defendant
testified that she had spoken to Commissioner Hudson about
"concerns and issues" with respect to Plaintiff, including the
August 2004 letter Defendant claims was the dispositive incident
culminating in Plaintiff's termination, (Sussman Aff. Ex. 1
(Warren Dep.) at 143; Def.'s Mem. 23-24), Commissioner Hudson
testified that Defendant did not at any time brief her on any
deficiencies in Plaintiff's performance. (Id. at Ex. 2 (Hudson
Dep.) at 25.)  The court also notes that while Defendant
testified that she had made no recommendation to Commissioner
Hudson that Plaintiff's contract be terminated (id. at Ex. 1
(Warren Dep.) at 169), Commissioner Hudson testified that
Plaintiff's individual contract with the County was terminated
solely because the Commissioner was informed that Plaintiff "was

a director of Bright Beginnings"[11] (id. at Ex. 2 (Hudson Dep.) at

24), a fact relayed to the Commissioner by Defendant. (Id. at

25.)  Finally, the court further observes that while Commissioner

Hudson testified that her understanding that Plaintiff was a

director at Bright Beginnings - an understanding created by

Defendant - was the sole reason for her decision to terminate

Plaintiff's individual contract (id. at 24-25), there is at least

some evidence on the record that Defendant was aware at the time

of her conversation with the Commissioner that Plaintiff was no

longer instituted in that capacity. (See Def.'s Stmnt. ¶ 24;

Pl.'s Stmnt. ¶ 24; Pl.'s Counter Stmnt. ¶ 49; Sussman Aff. Ex.

6.)[12]

----

[11] As noted in the Uncontested Facts Section of this
opinion, see supra, Plaintiff was party to a contract with the
County both as an independent contractor and as an employee of
Bright Beginnings. (Def.'s Stmnt. ¶ 1; Pl.'s Stmnt. ¶ 1.)  As
also noted, Commissioner Hudson testified that Plaintiff's
individual contract with the County was terminated "only because
Ms. McGuire, as [Commissioner Hudson] understood it, was a
director of Bright Beginnings[,] [and if the County was] going to
terminate the . . . Bright Beginnings contract, it didn't make
sense to have an [individual] contract with one of the
directors." (Sussman Aff. Ex. 2 (Hudson Dep.) at 24.)

[12] While the parties contest whether the evidence offered by
Plaintiff in this regard is sufficient to establish Defendant's
actual knowledge of this matter, (see Pl.'s Counter Stmnt. ¶ 49;
Def.'s Reply 14), the question of whether information contained
in the September 13, 2004 letter to Defendant from Bright
Beginnings' President (or the June 2004 meeting that this letter
meant to follow up) (see Sussman Aff. Ex. 6), was sufficient to
place Defendant on actual notice that Plaintiff was no longer a
director at Bright Beginnings is a question of fact.  The
parties' dispute with respect to this issue thus only serves to

These discrepancies in testimony and the underlying factual disputes regarding Defendant's role in effecting the termination of Plaintiff's contract – when read in the light most favorable to the Plaintiff, as is appropriate in the context of summary judgment – appear to the court as sufficient to support a reasonable inference that a causal nexus may exist between Plaintiff's protected speech at the January 21, 2004 meeting and the subsequent termination of her contract eight months later. See, e.g., Espinal, 558 F.3d at 129 (six month time difference between protected activity and adverse consequence does not defeat causal inference where inference is plausible on other grounds); Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 168 (2d Cir. 2006)("several months" does not defeat causal inference in the presence of additional support)(citing, inter alia, Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 2008)(eight month time lapse does not defeat causal inference)); Gorman-Bakos, 252 F.3d at 555 (five month difference does not defeat causal inference where additional evidence exists to support the inference); Bernhardt v. Interbank of New York, 18 F. Supp. 2d 218, 226 (E.D.N.Y. 1998)(eleven month time lapse does not defeat causal inference in presence of additional support),

---

support the conclusion that a genuine dispute with regard to an issue of material fact is present in this case.

amended on other grounds by No. 92 CV 4550, 2009 WL 255992
(E.D.N.Y. Feb. 3, 2009).

Further, in light of these disputes and discrepancies, the
court cannot endorse Defendant's argument that Plaintiff's
statement regarding her longstanding practice of voicing the same
kind of speech as that at issue here defeats the inference of
causality. (See Def. Mem. 23.)  In light of the credibility
issues presented by the record, it does not appear implausible
that the evidence could support a reasonable conclusion that
Defendant may have "waited to exact [her] retaliation at an
opportune time . . . in order to have a ready explanation for
[Plaintiff's termination]." Espinal, 558 F.3d at 129; see also
Bernhardt, 18 F. Supp. 2d at 226 (passage of eleven months
between Plaintiff's protected activity and Defendant's subsequent
adverse employment action did not warrant grant of summary
judgment because "it is a question of fact" whether Defendant may
have had reason to delay retaliatory action).

As the Court of Appeals has repeatedly explained,
"[a]ssessments of credibility and choices between conflicting
versions of events are matters for the jury, not for the court on
summary judgment.  Any weighing of the evidence is the
prerogative of the finder of fact, not an exercise for the court
on summary judgment." Gorman-Bakos, 252 F.3d at 558 (quoting

36

Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999)).
Because the testimonial discrepancies and factual disputes
discussed above "go to the fundamental issue of the true
motivation behind [Plaintiff's] dismissal," Gorman-Bakos,
252 F.3d at 558, summary judgment as a matter of law is not
appropriate. See Morris, 196 F.3d at 110 ("Summary judgment is
precluded where questions regarding an employer's motive
predominate in the inquiry regarding how important a role the
protected speech played in the adverse employment decision."
(citation omitted)); Frank v. Relin, 1 F.3d 1317, 1330-31
(2d Cir. 1993)(reversing the grant of summary judgment where
motivation for firing "clearly involved disputed questions of
fact").

## CONCLUSION

For all of the foregoing reasons, the Defendant's motion for
summary judgment is GRANTED with respect to Plaintiff's
allegations of speech made on July 30, 2004.  Otherwise,
Defendant's motion for summary judgement is DENIED in its
entirety.  The parties are directed to consult and, by December
17, 2009, to file and order governing preparation for trial. (A
form for such an order may be found on the court's website.)

It is SO ORDERED.

_____
Donald C. Pogue, Judge

Dated:      November 18, 2009
            New York, New York